## Ex parte J. Philip Krieger.

### June 17, 1879.

1. In a proceeding under the Habeas Corpus Act to bring up a prisoner charged with contempt in refusing to answer interrogatories propounded before a notary-public taking depositions, there is no presumption of jurisdiction in favor of the notary, and no adjudication as to the jurisdictional fact which the court is bound to respect: and it is the duty of the court to examine whether the commitment is within the intent of the Legislature, and within the meaning and spirit as well as the letter of the law.

2. The law does not confer upon a notary-public the arbitrary power to compel a witness to answer all questions, however incompetent, irrelevant, and inadmissible, which may be asked, and a refusal to answer is not necessarily a contempt.

3. To entitle a notary to commit for contempt, he must exercise his functions not only formally, but substantially in the manner and under the circumstances contemplated by law.

4. Where, in taking depositions before a notary-public, questions which may be competent under possible issues in the case are asked for the evident purpose of ascertaining facts to be used against the witness in another proceeding, a refusal to answer is not a contempt.

5. A deposition under the statute does not correspond to a bill of discovery in chancery, and it is an abuse of the deposition law to take depositions merely for the purpose of discovery.

6. Where a notary commits for a refusal to answer a question to which the courts would not have compelled an answer, the matter addresses itself directly to the courts.

7. For a flagrant abuse of process the notary is liable, and the attorneys engaged in promoting the proceeding are punishable by disbarment or otherwise.

Petition for *habeas corpus*.

*Petitioner discharged.*

E. T. Farish and H. A. Clover, for petitioner.

R. S. MacDonald and J. R. Harris, *contra*.

Hayden, J., delivered the opinion of the court.

The question presented in the present case appears to be essentially different from that raised by the facts of any application for *habeas corpus* which has been passed on in this State. The return, indeed, sets out the case of a

commitment by a notary-public engaged in taking a deposition of a witness in a pending suit, on the ground of refusal of such witness to answer questions put to him by the notary. But the return is to be considered in connection with the facts which appear, none of which are seriously disputed, though their relevancy is contested by the counsel for the sheriff. The bearing of these facts on the legal question presented will hereafter appear.

The question of jurisdiction, and of the power of the committing officer, is the only one open to inquiry in this proceeding. Under the thirty-third and thirty-sixth sections of our Habeas Corpus Act, it is the duty of this court to remand the petitioner if the commitment plainly and specifically charges a contempt, and if the officer had authority to commit for the contempt which is charged. Wag. Stats. 689, 690; *Ex parte McKee*, 18 Mo. 599; *Ex parte Goodin*, 67 Mo. 647.

But if the officer had no such jurisdiction, if it appears that in the matter in which he acted in committing the petitioner he had no authority or power to commit, the case is not within the purview of the statute. So, if, having jurisdiction of the subject-matter and of the person, a court, even of general jurisdiction, exceeds that jurisdiction by an excessive sentence, and this excess is patent on the face of the record, the judgment is considered as not merely erroneous or irregular, but void, and the petitioner entitled to his discharge. *Ex parte Page*, 49 Mo. 291; *The People ex rel. v. Liscomb*, 60 N. Y. 559. The inquiry is as to the jurisdiction of the court to render the particular judgment, and not merely to render a judgment in the general matter. In the case of a court of general jurisdiction, however, every presumption is in its favor; and it must be assumed that such court has passed upon the jurisdictional facts, and thus its judgment cannot be affected by matters *dehors* the record in a collateral proceeding like *habeas corpus*. *Ex parte Toney*, 11 Mo. 661.

But in the case of a court of limited jurisdiction, and still more in the case of a mere notary or other officer to whom the power to take depositions is given, there is no similar presumption. A contempt, indeed, is in itself a distinct and substantive offence, and in the case of a court of general jurisdiction there is no distinction in principle between a judgment pronounced after trial upon indictment, and a summary committal for contempt, so far as concerns the question of collateral impeachment. In either case the court has pronounced on the jurisdictional facts, and the presumption is that it has decided correctly. But the presumption of jurisdiction which attaches to the higher court does not exist in reference to the inferior court or officers. The statute gives the power to the officer, under certain circumstances, to commit for contempt, but does not undertake to change the important rule in regard to courts of general and courts of limited jurisdiction. When, as here, the question turns on the power of the inferior officer and his jurisdiction, it must be remembered that there has been no adjudication as to the jurisdictional facts which any court of justice is bound to respect. Here there is no judgment, however irregular and informal, from which the imprisoned party has the right to appeal; nor, on the other hand, has the person concerned had that security which must always exist where the proceedings have taken place under the sanction of judicial responsibility, and in an open court of justice. The officer taking a deposition is often ignorant alike of the law and the issues. It is through the writ of *habeas corpus* that a person imprisoned for contempt by a notary, or other similar officer taking a deposition, secures the first authoritative ascertainment as to the jurisdictional facts and the power of the notary to commit in the given matter. Cases like the present thus open a different inquiry from commitments which come from a court of record. In favor of the liberty of the citizen, it is the duty of the court or judge, upon similar applications, to examine

the facts upon which the alleged jurisdiction rests, and to inquire if the commitment is "according to law" (sect. 36, *supra*), not only within the letter of the statutes, but within their meaning, and the intent of the law-making body.

In *Ex parte McKee*, *supra*, no question was made as to the nature of the proceeding, nor could the court see from the return any such facts as exhibited by the present return. The suit in which the deposition was taken was pending in Jackson County, and the deposition was taken in the city of St. Louis. The question raised by the present facts was not mooted, the illegality of the imprisonment being there alleged to consist in the irrelevancy of the questions put, in the omission of the notary to decide as to the relevancy, and in the want of the power of an officer engaged in taking a deposition to commit for a contempt of the kind there charged. The opinion of the court assumes, and has for its basis the assumption, that the proceeding was the taking of a deposition, and that the notary was engaged in good faith in the proceeding contemplated, not merely by the letter, but by the spirit of the statute. *Ex parte Mumford*, 57 Mo. 603, was not a case before the court, and, moreover, turned upon the question whether there was a "suit pending." The facts that raise the present question did not then exist. The decision accordingly proceeds merely upon the well-established rule that a deposition may be taken at any time after suit brought, but pays no attention to the necessary interdependence between the power of the officer to commit and imprison, and the jurisdictional facts which the law intends shall exist as the basis of that power. The same observations apply to *Ex parte Scruggs*, decided by Judge Bakewell. But a notary, as a notary, has no power to commit for contempt; and contempt of court is a recognized offence, but there is no such thing known to the law as contempt of a notary-public.

It is only by reason of the exercise of a function in the manner and under the circumstances contemplated by the

Legislature that there can here be contempt within the meaning of the law. As, if no suit were pending, the mere going through with certain formal steps described in the statutes in regard to depositions could not invest the notary with the necessary power, so if, when a suit is pending, the forms of the act are complied with, yet the proceeding is not that contemplated by the law, the jurisdiction does not attach. The proceeding cannot be made the taking of the deposition by calling it so. The question is, whether the substantial as well as the formal parts of the law are complied with. We must look at the intention existing in the minds of the law-makers, and consider that in connection with the power which a merely literal construction gives to inferior and practically irresponsible officers over the liberty of the citizen. The contention is that, even in favor of that liberty, and against an abuse of almost arbitrary power, we cannot regard the meaning of the statutes or the intent of the law-maker. The statement of this proposition is its refutation. Perhaps no better instance could be given of that sticking in the bark which a primary maxim of legal construction condemns, than the argument that because the first section of the Deposition Act reads that " any party to a suit pending in any court in this State may obtain the deposition of any witness to be used in such suit conditionally," therefore the Legislature intended that a notary, or similar officer, by going through with some or all of the forms prescribed by the act, should acquire the power, irrespective of any other circumstances, of compelling a defendant in a suit to answer any question which the notary may choose to insist upon, under penalty of an indefinite imprisonment. It is clear that the Legislature intended to give no such power, and it is only by refusing to regard the essential meaning of the words of the act, and the purpose which the law-makers had in view, that the conclusion can be reached that the Legislature so intended. So, where the Witness Act provides, "A person summoned

as a witness, and attending, who shall refuse to give evidence which may lawfully be required on oath or affirmation, may be committed to prison by the court, or any person authorized to take his deposition or testimony, there to remain without bail until he give such evidence,'' not merely the letter but the meaning of the section, and the purpose which the law-maker had in view, must be regarded. It is impossible for us to escape the conclusion that, while in the present case the forms of taking a deposition were gone through with, the proceeding was of a different character, and used to accomplish other purposes. The facts that the petitioner lived in the city of St. Louis, where he had resided thirty years, and that he had no intention of removing from or leaving that city ; that he was in good health, and expected to be present at the trial of the cause, in themselves of little significance, must be considered in connection with the other facts. The suit was against the petitioner and others as officers and directors of the Broadway Savings Bank ; the plaintiffs, as depositors, seeking to hold the defendants liable for a statutory penalty, on the ground that they had assented to the reception of the deposits after they knew that the bank was insolvent or in failing circumstances. The suit was commenced by attachment on the 24th of May, 1879, and notice given to take depositions on the second day of June. A subpœna was issued and served upon the petitioner, and he appeared, and upon that day many questions were put to him.

The return states that, the petitioner being asked whether he had not got money and personal property concealed in the Safe Deposit Company for the purpose of hindering, delaying, and defrauding his creditors, the petitioner declined to answer, on the ground that the question was a privileged question. The witness was then asked '' whether he was certain he put the money and bonds he spoke of in the Safe Deposit Company?'' '' Have you any personal property concealed, or held by any other person or corporation for

your benefit?" "How much money or property have you deposited elsewhere than with the Safe Deposit Company?" and refused to answer upon the same ground. The notary said that these questions were material and competent, and commanded the petitioner to answer them; and upon his refusal, ordered that the petitioner be imprisoned in the city jail until he consented to answer. Before the above questions were put, a great many had been asked, and answered by the petitioner, about the management of the bank, the petitioner's connection with it, and what property the petitioner had, and had conveyed or assigned. In answer to a question put to him on the 3d of June, as to where his money then was, he stated that some of it was in his safe at his house. It appears that upon this the plaintiffs in the suit, with one of their attorneys, immediately left the room where the examination was proceeding, and went with a deputy-sheriff to the petitioner's residence, and there levied upon the safe, and opened and searched it. Upon the next morning the examination was continued, and many questions put to the petitioner based upon the search thus made, and the previous statements of the petitioner in regard to his money being in the safe. The petitioner was asked where the money was; who put it in the Safe Deposit Company; how much money there was there, etc., and the questions were put which have been quoted from the return.

It is not necessary to comment at length upon the facts thus presented. The character of the proceeding is apparent. It is only upon the supposition that the mere forms of law will sanction any abuse of legal process, however great, that it can be maintained that this proceeding was the taking of a deposition intended by the statute, or the power which the officer took upon himself to exercise in committing and confining the petitioner a power given to him by law. It appears that the eliciting of testimony which might possibly have been used, but which there is no ground for believing ever was intended to be used in court, was

made merely as a cloak for ascertaining the whereabouts of the property of the petitioner, a defendant in the case, at the time when the questions were put. The information then obtained was immediately acted upon, and when disappointment was the result, another course of examination, based upon the failure to find property, was entered upon, with a view evidently to discover and attach other property. Further questions were put, all directed, either openly or through the thin disguise of inquiry under possible issues in the attachment proceeding, to the present situation and condition of the petitioner's property, and it is in the failure to answer such questions, as shown by the return, that the so-called contempt consists.

Leaving out of view the perversion of legal process, and the use of the forms of law as a cover for the accomplishment of ulterior purposes, if we examine into the nature of this proceeding we find that, putting the most favorable construction upon it of which it is susceptible, it is an attempt to institute, immediately on the commencement of a suit, a procedure allowed by law only after final judgment in a court of record, and execution returned unsatisfied. Wag. Stats. 619, sect. 71 *et seq.* Disregarding circumlocution, used merely as a blind, the inquiry is as to the present whereabouts of the defendant's property. If a proceeding of this kind is permissible as against one whose liability is unfixed, there is little need of the elaborate provisions and of the judicial decision in writing so carefully provided for in the case of a judgment debtor. Thus we arrive at the character of the proceeding, testing it, not by the forms used in instituting it, or by the name it is called by in papers, but by its essential legal features.

The position has been hazarded in argument that where a deposition has been properly taken under the statute, the process corresponds to discovery by bill in chancery. If this were so, it would seem that a bill for discovery as to the matters inquired into would be demurrable. Mitford's

Ch. Pl. (Tyler's ed.) 292 ; 2 Ph. on Ev. *937 ; Story's Eq. Pl., sect. 607. But it is hardly necessary to say that there is no foundation for the position. In the first place, the contemplation of the statute is that a deposition shall be taken only as a precautionary measure, and because there is reason to fear the witness will not be present at the trial. However sanctioned, it is an abuse of the statutory powers, of which lawyers, as officers of court, ought not to be guilty, to take depositions merely for the purpose of discovery, and the difficulty of correcting the abuse ought to put them more upon their honor. It is characteristic of the common law that it refused to assert the power of compelling parties to take depositions, or to encourage the practice. It is only by resorting to a system of law not possessed of that spirit which insists upon the production of witnesses face to face with the court and jury, that we arrive at the admission of testimony through affidavits and depositions. To prevent a failure of justice, and remedy a great practical inconvenience, indeed, the statute provides that depositions may be used in a few specified contingencies. But so far is the law of this country from giving countenance to the trial practices of the civil law, that the tendency has been to apply even to the trial of chancery cases the rules which secure the production of witnesses in open court. The citizen is entitled, not only to trial by jury, but to those trial processes which make it effectual and are a part of his rights as a litigant. That free and impartial trial which it is the great object of the law to secure for him is often seriously interfered with by results arising from the vicious habit of manipulating in a notary's office the testimony of witnesses. who are to be, and will be, present in open court.

But, again, there is nothing in the statute upon the subject of depositions which places a defendant whose deposition is taken in any other light than an ordinary witness, subjected to the rules of examination prevailing at common law. The fact that this testimony is taken by deposition,

and not in open court, does not create a peculiarity in this respect. A court of justice would here have seen the character of the proceeding, and the object and the purpose of the questions put. It is only by claiming for the notary, in the present case, a power that a court of justice would not have exerted, that the petitioner could have been compelled to answer the questions for refusing to answer which he was committed. Upon the facts, blame did not attach to the petitioner. As is said by Judge Denio, in *The People* v. *Hackley*, 24 N. Y. 78 : " The conduct charged as constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated of it ; for if the acts be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so."

In the present case, the plaintiffs and their counsel no doubt proceeded as they did sincerely believing that they had a legal right to do so ; but the case may be supposed where the evidence would disclose a sham petition, filed merely to enable a party to take testimony with a view to its publication in the newspapers. It would be absurd to say that in such a case the court could not see what was patent, or protect the citizen in his rights. So, for such abuse of process the notary would undoubtedly be liable, and the attorneys engaged in promoting the proceeding subject to punishment, on proper presentation, by disbarment or otherwise. It is a singular misconception of the judicial power to suppose that the courts cannot look beyond certain forms, where the exercise of judicial functions is concerned. It may be doubted whether the Legislature itself has power to interfere with the courts and the conduct of judicial business to the extent that is implied by the construction of the Deposition Act now contended for. The abuse of judicial power in reference to a matter pending in court addresses itself directly to the courts. Such a power the

notary assumes. It is by subpœna, a process of the courts, that he compels attendance. Though 'for convenience he is generally commissioned, and not specially in each case by the court, he is an officer of the court, assuming to take testimony for the court. If he takes it not for the court, but to accomplish the private purposes of parties, he violates his duties, and is amenable to the courts for such violation.

The petitioner will be discharged. All the judges concur.