Ex Parte J. H. Livingston.

April 4, 1882.

1. A deposition may be taken after suit is brought and before the issues are made up.

2. If the questions asked have direct reference to the matters charged in the petition, the officer cannot assume that they are irrelevant to the issues to be framed.

3. If the question is neither privileged, nor foreign to the subject-matter of the suit, nor evidently asked for a purpose not contemplated by the litigation, the officer may compel an answer.

4. The word "conditionally," in the statute concerning depositions, limits not the right to take, but the right to use them.

Petition for a writ of *habeas corpus.*
*Writ denied.*
Davenport & Napton, for the petitioner.
W. C. Jones and M. G. Smith, *contra.*

LEWIS, P. J., delivered the opinion of the court.

The petitioner applies for a writ of *habeas corpus*, to inquire into the legality of his imprisonment in custody of the sheriff and jailor of the city of St. Louis. His petition sets forth at length the alleged causes of his detention, with all the facts constituting his claim to be released; so that there is no difficulty in determining, upon the hearing of this application, all the questions that would arise upon an issue and return of the writ. The causes and facts thus shown are substantially as follows : —

Charles H. Peck instituted a suit in the St. Louis Circuit Court, returnable to the April term, 1882, against this petitioner and other defendants, the petition wherein charged that the defendants, by false pretences of the ownership of large means, including valuable lands in Texas and elsewhere, had induced the plaintiff to sell and convey to them a valuable leasehold of the Windsor Hotel, in the city of St. Louis, at the price of $50,000, payable partly in cash, and the remainder in the property described, which was alleged to be worth $30,000, or more; that in the course of their bargaining, there were several modifications of the agreed terms of sale, but finally, conveyances were made on both sides, and the plaintiff put the purchasers in entire possession of the leasehold and its appurtenances; that afterwards, the plaintiff discovered that the said purchasers were in fact impecunious adventurers without substantial means, whose supposed title to the Texas lands was based upon a forgery, and was absolutely valueless; and that other property and securities employed to effect the purchase were worthless, or nearly so.

The prayer of the petition was for a cancellation of deeds, and for such further relief as would place the several parties *in statu quo*.

After the filing of the petition and service of process in that suit, but before the return term, the plaintiff proceeded to take depositions for the cause, under Revised Statutes, chap-

ter 26, at the office of L. L. Walbridge, a notary public, and caused this petitioner to be subpœnaed as a witness. He appeared accordingly, and was duly sworn to testify. In the course of the examination he was asked these questions : "And you were then trying, in November — at the time I refer to — you were endeavoring to have Mr. Peck take that property at an increased valuation of $5,000, viz., $25,000, instead of $20,000, were you not?" "The arrangement of October 25, 1881, was subsequently modified by a verbal understanding between you and Mr. Peck, was it not?" "Was the arrangement of October 25th modified?" To these questions, as severally put, the petitioner refused to make answer; alleging, as his grounds of refusal, that he (the witness) was a resident of the city of St. Louis, and expected to be here on the day of the trial; that the questions were irrelevant and incompetent; that the act of the witness, in respect to the matter inquired about, could not affect his wife's interest in the property which is now sought to be held for the alleged debt; that the case was returnable to the April term, 1882, of the circuit court of St. Louis, and the return-day of said term had not yet come; the issues in the case had not been made up, and the bill was subject to demurrer; that portions thereof were subject to be stricken out as immaterial and irrelevant; that the entire bill had no equity in it, and that portions of the bill to which the questions related should be stricken out on a motion to that effect. The petitioner persisted in his refusal to answer, whereupon the notary committed him to custody, until he should be ready to answer, or should be discharged according to law.

We have given space to these details, chiefly in order to show that there is no parallel in this case with *Ex parte Krieger* (7 Mo. App. 367), wherein the prisoner was discharged. There, the petitioner was called upon to testify in a proceeding against himself and others, as officers of a bank, for receiving current deposits after they had knowl-

edge that the bank was insolvent. The questions propounded to him had sole reference to certain dispositions of his own money and property, which could have no possible relation to the matters in issue, and were manifestly sought only to furnish ammunition for another and different mode of attack upon the same parties. To compel answers to such questions would be a patent abuse of the notarial authority, and we held that the petitioner was justified in the refusal to answer. In the present case, nothing of this sort appears. The questions propounded to the witness have a distinct reference to the events detailed in the plaintiff's petition. It cannot be assumed that they are irrelevant to the issues yet to be framed about those events. The notary's decision, that the questions propounded are relevant to the issues, cannot be treated as conclusive or as entitled to the weight of an adjudication by a court of general jurisdiction. But if his power is to be so restricted that he can in no case determine the question of relevancy, to the effect of compelling an answer from the witness, the deposition law might as well be at once abolished. A witness could never be compelled to answer any question whatever if he chose to set up the objection of irrelevancy to the issues. The safe rule is clearly indicated in the authorities, when considered together. If the question be foreign to the subject-matter of the suit pending, and be evidently asked for a purpose not contemplated by the litigation, the officer will not be sustained in any attempt to enforce an answer by proceedings as for a contempt. This is the doctrine of *Ex parte Krieger* (*supra*), and furnishes a conclusive answer to expressed apprehensions of impertinent inquiries into the private affairs of the witness, his political affiliations, etc. But if these objections do not appear, some latitude must be allowed to the notarial discretion. It is idle to urge that the officer can know nothing about the relevancy of a question before the issues have been made up. As was said in *Ex parte Munford* (57 Mo. 603), the taking of the deposition

has no reference to the then existing condition of the cause ; but is in order " to secure testimony for the case in its future condition, whatever that may be, at the time of the trial." The object is to provide a guard " against the contingencies of death, disease, or removal of witnesses, before the trial can be reached." If the officer finds the question free from the objections above supposed, and that it may, in some or any aspect of the possible issues, be found relevant to the investigation, it is his duty to compel an answer, and the courts will sustain him in so doing. The party taking the deposition will, in such case, be entitled to the testimony and to have its relevancy properly passed upon by the court wherein the cause is pending at the time of the trial. This doctrine is established in *Ex parte McKee* (18 Mo. 599), wherein there was no occasion to refer to the consequences of such a state of facts as were afterwards presented in *Ex parte Krieger*. But in no view whatever of the present case, can there be any pretence of objection to the action of the notary, on the ground of irrelevancy in the questions whose answers he undertook to compel. What is above said has, of course, no reference to any consideration of personal privilege in the witness.

The statute provides as follows (Rev. Stats. 352): " Section 2130. Any party to a suit pending in any court in this state may obtain the deposition of any witness, to be used in such suit conditionally."

The intended application of the word " conditionally " appears in section 2157, which must be read in connection with the foregoing, thus : " Examinations or depositions taken and returned in conformity to the provisions of this chapter, may be read and used as evidence in the cause in which they shall have been taken, as if the witnesses were present and examined in open court on the trial thereof. * * * *First,* if the witness resides or has gone out of the state ; *second,* if he be dead ; *third,* if by reason of age, sickness, or bodily infirmity he be unable to, or cannot safely,

attend court; *fourth*, if he resides in a county other than that in which the trial is held, or if he be gone to a greater distance than forty miles from the place of trial, without the consent, connivance, or collusion of the party requiring his testimony; *fifth*, if he be a judge of a court of record, or practising attorney or physician, and engaged in the discharge of his official or professional duty at the time of the trial."

We are here confronted with the claim of petitioner's counsel, that the word "conditionally," in the first section above quoted, refers as well to the taking of the deposition, as to the using of it. As the sentence is framed, no rule or usage, of grammar or of language, will tolerate such an assumption. If we were to say, "Every teacher of a public school may purchase a Bible, to be used in such school occasionally," would any man in his senses assert that the adverb "occasionally" was intended to qualify the purchase, as well as the use of the book? We think not. And yet, although the meanings are different, the structure of the two sentences, and the relations of their respective elements to one another, are precisely the same. That such an idea was never contemplated by the legislature is evident from other provisions of the statute. The only "conditions" whereby the statute makes specific the general qualification in the first section, are those which appear grouped together, under a common introduction, in the second section above quoted. It follows, upon the construction claimed, that a wise provision is made for *taking* the deposition of a witness "if he be dead." But the permission given is expressly that the "deposition taken" may be "*read and used* in evidence" upon the specified conditions. Nothing is here included about the conditions of taking the deposition. It results, if counsel is right, that the deposition can be taken only "conditionally" according to the first section, and yet the statute leaves us wholly in the dark as to what the condition or conditions may be. The ingenuity of coun-

sel finds a solution of this difficulty, in the proposition
that we must look to the old rules in chancery for the ap-
plication of the word " conditionally," as used in the statute.
But this proposition is alike untenable. It must be remem-
bered that no such thing as a chancery or common-law rule
exists in Missouri, where a statute has provided for the
same subject-matter. It is only where no statute exists,
or where the statute, if one there be, is not sufficiently
comprehensive to embrace the particular matter in hand,
that the analogies or the precepts of common law or equity
may be resorted to for the rule of action. It is fundamen-
tal that, where a statute undertakes to provide regulations
for any subject-matter, it must be taken to establish all
necessary or proper regulations, if the words will bear such
an interpretation. In the present instance, the statute has
undertaken to provide for the securing of testimony before-
hand, for a cause which is pending, but not yet tried, in
the shape of a written deposition which may thereafter be
read at the trial, if the oral testimony of the witness can-
not be produced. Its provisions are ample for all contin-
gencies, and specifically for those concerning which counsel
would have us seek for further light in the chancery juris-
prudence. It provides for the taking of depositions by
any party, in any case, provided, only, that the suit be
pending. Such has been the universal understanding of
its terms, by bench and bar, in Missouri, for nearly fifty
years. What need — what right — have we, to leave the
statute and go to chancery, as counsel would have us do, to
ascertain *when* a deposition may lawfully be taken? As little
right have we to look in the same direction for the applica-
tion of the word " conditionally." The same statute defines
the conditions exacted, and distinctly specifies their applica-
tion, consistently with at least a fair interpretation of the
sentence in which the word occurs. We cannot look else-
where for either the conditions or their application.

The obvious and beneficent purpose of the statute is,

that a party seeking justice, and having given a sufficient guaranty of earnestness and good faith by the institution of a suit or a party who is brought into court to answer the claim of another, may not be compelled to take all risks of losing the testimony in his behalf before it may be made available in the trial, but may provide against the uncertainties of human life, health, or permanency of residence, by obtaining the deposition of his witnesses while it is certainly within his reach. But justice to the adverse party requires that the witness's testimony shall be heard in open court, if this be practicable. Hence, notwithstanding the deposition may be obtained without condition, yet it may not be used at the trial, unless some one of the contingencies described in the statute indicates the impracticability of procuring the personal attendance of the witness. The statute is simple and direct in its expressions, and needs no hair-splitting discussion of obsolete regulations which it was designed to supersede. Its meaning is not unsettled, as counsel seems to assume. The adjudications are not inconsistent. We discover no conflict concerning them, unless it be between the decisions themselves and the unwarranted interpretations put upon them, or between their true interpretations and those which ingenious counsel may skilfully maintain in the interest of their clients. *Lewin* v. *Dille*, 17 Mo. 64; *Ex parte McKee*, 18 Mo. 599; *Ex parte Munford*, 57 Mo. 603; *Ex parte Krieger*, 7 Mo. App. 367; *Ex parte Scruggs* (*per* BAKEWELL, J.), not reported. We can perceive no force in the argument based on Revised Statutes, sections 1412, 1416. These enactments authorize a party to compel his adversary "to testify as a witness in his behalf, in the same manner and subject to the same rules as other witnesses," and provide that if such adversary, "on being duly summoned, refuse to attend and testify, either in court or before any person authorized to take his deposition, besides being punished himself as for a contempt, his petition, answer, or reply may be rejected,"

etc. All this, except what concerns the rejection of the pleading, is precisely what the plaintiff in the suit and notary have been trying to carry into effect. The provision about the rejection of the answer, etc., is merely cumulative, and can have no influence to annul the preceding requirements, because there is no answer to be rejected. The reasons given by the petitioner for his refusal to answer, which are not herein specially noticed, were frivolous, and require no comment.

We are of opinion that the notary, in committing the witness under the circumstances, did nothing but what was his bounden duty under the law. The writ of *habeas corpus* is therefore denied. All the judges concur.