## In re JORDAN.

*(District Court. S. D. Iowa, E. D.   February 9, 1892.)*

1. **HABEAS CORPUS—ISSUANCE.**
   *Habeas corpus*, though a writ of right, will not issue as of course from the federal courts, since Rev. St. U. S. § 755, provides that, on application, it shall issue forthwith, "unless it appears from the petition itself that the party is not entitled thereto."

2. **SAME—FROM FEDERAL COURTS TO STATE OFFICERS.**
   Federal courts will proceed with great caution upon applications for writs of *habeas corpus* in behalf of a person imprisoned under process of the state courts, and, when practicable, will investigate the questions raised before issuing the writ.

3. **SAME—QUESTIONS REVIEWABLE—VIOLATION OF STATE LIQUOR LAWS.**
   Where a person has been convicted of violating the prohibitory liquor law of Iowa by a state court of general jurisdiction having jurisdiction of the person and the subject-matter and authority to render the particular judgment, such decision cannot be reviewed in the federal courts on an application for a writ of *habeas corpus*, alleging that the sales for which the conviction was had were made in the original packages of importation, but also showing that the court charged the jury in strict accordance with the decision of the United States supreme court in the original package case, *(Leisy v. Hardin*, 10 Sup. Ct. Rep. 681, 135 U. S. 100.)

4. **SAME—QUESTION OF FACT.**
   On *habeas corpus* to release a person convicted of crime in a state court the federal courts have no power to inquire whether the evidence was sufficient to support the verdict and judgment.

5. **SAME—CONTEMPTS.**
   An application to a federal court for a writ of *habeas corpus* to release a person imprisoned by virtue of a judgment of a state court, based upon a finding of contempt, is to be determined by the same principles applicable in the case of a judgment on the verdict of a jury.

6. **INTOXICATING LIQUORS—"ORIGINAL PACKAGE" DECISIONS.**
   In *Leisy v. Hardin*, 10 Sup. Ct. Rep. 681, the supreme court did not declare the Iowa prohibitory law void, either in whole or in part, but merely restricted its application to property entirely within the jurisdiction of the state. *In re Rahrer* 11 Sup. Ct. Rep. 865, 140 U. S. 563, followed.

7. **SAME—TAXATION AND PROTECTION—CONSTITUTIONAL LAW.**
   The payment of the tax imposed upon retail liquor dealers by the statutes of the United States in no wise entitles the dealer to protection against a state prohibitory law.

On Application for Writ of *Habeas Corpus*.   Writ denied.

*Liston McMillan*, for petitioner.

*D. H. Emery*, for respondents.

WOOLSON, J.   Upon January 23, 1892, the application of Kinsley Jordan for writ of *habeas corpus* was presented to this court.   The application, with accompanying exhibits, is voluminous.   In substance, it alleges that petitioner is restrained of his liberty by the sheriff of Wapello county, Iowa, who detains petitioner by reason, as claimed, of certain writs of execution or *mittimus*, issued upon judgments rendered by the district and circuit courts of said Wapello county, a portion whereof were rendered on verdicts of guilty in criminal cases, and the remainder upon findings of said courts that petitioner was guilty of contempts in having violated certain injunctions.   All of said judgments are for alleged violations of statutes of Iowa with reference to sale of intoxicating liquor.   These judgments, as exhibited, with application, are seven in number, and may be summarized as follows:

| Date. | By what Court. | In what Proceedings. | Sentence Adjudged. | |
|---|---|---|---|---|
| | | | Fine. | Imprisonment. |
| Nov. 21, '85. | Circuit. | Contempt. | $ 500. | |
| April 3, '86. | Circuit. | Contempt. | $ 500. | |
| Sept. 18, '86. | District. | Criminal. | $ 600. | |
| Jan'y 29, '87 | District. | Contempt. | $1,000. | |
| Oct. 8, '87. | District. | Contempt. | $1,000. | Six months. |
| Oct. 8, '87. | District. | Contempt. | $1,000. | Six months. |
| April 28, '88. | District. | Criminal. | $ 500. | |

All of these judgments provide, in addition, that, if the fine and costs are not sooner paid, the judgment defendant shall be imprisoned in the county jail until the said imprisonment, at $3.33⅓ per day, shall equal the amount of the fine. And the second sentence, rendered upon October 8, 1887, provides that it shall commence at the expiration of the first sentence of that date. The exhibits show that these injunctions, for whose violations petitioner was sentenced, were entered or issued in at least three, and probably four, different equitable actions under the Iowa statutes. But none of the decrees so rendered or writs issued in these three or four actions are exhibited or referred to, except as said exhibits recite their existence. The illegality of the restraint is alleged in two divisions, the first being, in the phraseology of the application, as follows:

"That all of said judgments were rendered in prosecutions against this defendant for alleged selling or keeping for sale intoxicating liquors, contrary to the laws of Iowa. All of the liquors referred to in the said prosecutions were manufactured outside of said state of Iowa,—in Illinois, Missouri, and other sister states,—and shipped from those states into the state of Iowa, on the order of petitioner, and were sold by him in the original package in which they were shipped into the state, or by drawing the same from said original package in the act of selling; and they were neither kept for sale nor sold by him in any other way; and he sold none to minors, drunkards, or lunatics; and he only sold them and kept them for sale to responsible adults. Petitioner avers that all of said business was transacted prior to the passage of what is commonly called the 'Wilson Bill' by the U. S. congress, August 8, 1890. Petitioner avers that under the constitution of the United States, (article 1, § 8,) which provides that congress shall have power to regulate the interstate commerce, as construed by the federal supreme court in what is commonly known as the *Bowman Case*, 8 Sup. Ct. Rep. 689, 1062, and the *Leisy Case*, 10 Sup. Ct. Rep. 681, the state traffic as carried on by your petitioner was lawful, being in harmony with the constitutional provision above quoted, and amply justified thereby; and petitioner avers that, so far as the prohibitory liquor laws of Iowa conflict with petitioner's said business, the same were contrary to the said provision of the federal constitution, and are null and void."

The second point of illegality alleged in application relates to payment of the United States tax, viz.: That petitioner had, during the periods embraced in said exhibits and acts therein adjudged against him, annually paid to the general government $25 per year as the retail liquor dealer's special tax; and that all the liquors sold by him had paid to the government the per gallon or per barrel tax required by the United States statutes, whereby he was protected from state interference while disposing of said liquors; "the constitutional definition of the word 'tax' in article 1, § 8, of the federal constitution, making 'taxation' correlative

with 'protection,' and involving the duty and necessity of such protection by all the departments of the government receiving the taxes;" and that, therefore, the state prohibitory law, wherein it attempts to prohibit and punish the person selling such taxed liquors, is null and void, because in conflict with the federal constitution. It is also asserted that this application has not heretofore been presented to nor been refused by any court or judge.

Ordinarily, upon presentation of the application, the writ is at once granted, and the legality of the restraint is determined on the return of the restraining officer, or on the hearing. For reasons readily apparent from the foregoing synopsis of the application, I have proceeded with more hesitancy in this case; and because of the hesitation with which judges of the national courts interfere at any time with convictions which have been had before courts of general jurisdiction of the states, I entered a rule citing the sheriff and the county attorney of said Wapello county to appear and show cause, if any they had, why the writ should not issue as prayed. Hearing was duly had before the court, D. H. Emery, Esq., appearing in opposition to the application, and filing his demurrer thereto, as insufficient to authorize the issuance of the writ. And the point now to be decided is, does the application present a case justifying the issuance of the writ of *habeas corpus?*

The writ of *habeas corpus*, though a writ of right, will not issue as of course. Section 755, Rev. St., provides that the court to whom the application for a writ is made, shall forthwith award the writ, "unless it appears from the petition itself that the party is not entitled thereto." The courts of the United States have great respect for state authority; and it is only after full and most careful investigation and consideration, although acting within the undoubted scope of its jurisdiction, that a federal court will take from a state officer a person committed to him by a state court, and charged with an offense against state laws, which are attacked as in conflict with the federal constitution. *In re Hoover*, 30 Fed. Rep. 53, concisely illustrates this point. In that case the writ of *habeas corpus* from the United States court was sought against the sheriff of the state court by one imprisoned under judgment imposed for violation of a state law, which the application attacked as in violation of the United States constitution; and the federal court declared that "to enlist the process of this court in his behalf the petitioner must clearly show an irreconcilable antagonism between the state enactment and the constitutional declaration." Yet, when such investigation makes plain the fact of restraint in violation of the constitution of the United States or laws enacted thereunder, the federal court will not hesitate to act accordingly.

Should the writ issue herein? With regard to the second point alleged in application as grounds for action herein, I have no hesitancy in deciding. As to the payment of the special tax imposed upon the retail liquor dealer, the statute imposing the tax (section 3243, Rev. St.) itself withholds from petitioner relief herein. The payment of that special tax can in no manner or degree operate as a shield in the violation of the state prohibitory law. The supreme court of the United

States have in such numerous decisions recognized the right of each state to determine for itself the question of the regulation or prohibition of sale of intoxicating liquors that it is useless to cite the cases. One element only is withheld from this otherwise absolute right and power of the state in this respect, and that relates to interstate relations; being the first point in application. And without enlargement of argument I hold the second point of application to be insufficient to authorize the issuance of the writ.

As to the first point stated in application, viz., that asserting the attitude of petitioner with regard to "original packages" of intoxicating liquor, and his right to relief herein. The exhibits attached to application are expressly made a part of the application. These exhibits severally show that the courts which rendered the judgments are of general jurisdiction; that these courts had jurisdiction of the subject-matter before them, viz., the alleged violation by petitioner of the state laws with reference to selling or keeping for sale intoxicating liquor; and that these courts also had in each case (so exhibited) jurisdiction of the person of petitioner. In each of said cases petitioner appeared by counsel, except in the contempt case of January 29, 1887, and in that case the record shows petitioner had been duly served with notice of said proceedings. As this court takes judicial notice of the statutes of Iowa, it is also manifest that these courts had, under said statutes, the authority to render such judgments as those exhibited herein. Thus we have in each case exhibited (1) a court of general jurisdiction, having, under the Iowa statutes, jurisdiction of the subject-matter involved; (2) such court had jurisdiction of the person of the petitioner; (3) such court had authority to render the particular judgments exhibited. Wherein, then, exists the illegality upon which petitioner relies for relief? The writ of *habeas corpus* does not operate as an appeal, a writ of error, or *certiorari*, nor has it the effect of these proceedings; and this court in no wise sustains an appellate relation to the Wapello circuit or district courts. This court cannot, in this proceeding, nor in any other manner, review or correct mere errors or irregularities, if any exist, in the judgments of those courts. There lay within petitioner's easy reach the remedies provided by the Iowa statutes, whereby petitioner might have brought into review before the supreme court of that state whatever errors or irregularities in proceeding or decision were committed by those courts, and subject to review. Whether petitioner exercised these remedies, or any of them, the record does not disclose. But the proceeding on *habeas corpus* deals with more radical defects, with defects attaching to the jurisdiction of the court pronouncing judgment, or officer restraining thereunder, or to the jurisdictional or constitutional questions involved in the trials complained of. Even though, by prosecuting his appeal or writ of error or *certiorari*, petitioner might have had any existing errors reviewed, and, as a possible result thereof, received his immediate discharge in the state courts, yet the existence of such error furnishes no ground for his release on *habeas corpus*. *Platt* v. *Harrison*, 6 Iowa, 79; *Ex parte Watkins*, 3 Pet. 193; *Ex parte Parks*, 93

U. S. 18; *Ex parte Reed*, 100 U. S. 13; *Ex parte Crouch*, 112 U. S. 178, 5 Sup. Ct. Rep. 96; Church, Hab. Corp. 474, and cases cited.

The application under consideration is not especially distinguishable, as to the writ prayed for, from one exhibiting only judgments rendered upon verdicts of guilty in purely criminal actions. The element here added of judgments upon findings by the court of contempts of its process of injunction does not materially change the questions which may be herein considered; for, though a contempt is in itself a distinct and substantial offense, yet in a court of general jurisdiction there is no distinction in principle between a judgment pronounced after trial on indictment and a judgment pronounced upon a finding of contempt proven, so far as concerns the question of collateral review or impeachment. In either case the court has pronounced on the jurisdictional facts. The presumption is that it has decided correctly, and the correctness of that judgment we may not review here. *Ex parte Krieger*, 7 Mo. App. 367; *Robb v. McDonald*, 29 Iowa, 334; Hurd, Hab. Corp., and cases cited. The application herein sets out no fact which the courts rendering the judgments exhibited might not legally have acted upon. And certainly, at least until it is attacked, the presumption must obtain in this court in this collateral proceeding that these courts of general jurisdiction decided correctly every point of law presented for their decision in the trials resulting in these judgments. If error was claimed to attach to their decision on any point, the right therein remained to petitioner to bring before the highest court of the state for review and correction the point wherein error was claimed; and the presumption must obtain that the supreme court of the state would decide correctly. "It often occurs in the progress of a criminal trial in a state court, proceeding under a statute not repugnant to the constitution of the United States, that questions occur which involve the construction of that instrument and the determination of rights asserted under it. But that does not justify an interference with its proceedings by a court of the United States upon a writ of *habeas corpus*, sued out by the accused, either during or after trial in the state court; for, as was said in *Robb v. Connolly*, 111 U. S. 624, 637, 4 Sup. Ct. Rep. 544, 'upon the state courts, equally with the courts of the nation, rests the obligation to guard, enforce, and protect every right granted or secured by the constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them;' and 'if they fail therein, and withhold or deny rights, privileges, or immunities secured by the constitution or laws of the United States, the party aggrieved may bring the case from the highest court of the state in which the question could be decided to this court for final and conclusive determination.'" *Wood v. Brush*, 140 U. S. 286, 11 Sup. Ct. Rep. 738.

Counsel for petitioner, in the argument under the rule, claimed (as the application itself alleges) that in the *Leisy Case*, 135 U. S. 100, 10 Sup. Ct. Rep. 681, the supreme of the United States had declared the Iowa prohibitory law to be unconstitutional, and therefore null and void, as to liquor shipped into the state and sold in the "original pack-

age;" and that, as the application alleges (for the purpose of this decision we will not dispute the construction of application which makes it so claim and allege) that the sales on which petitioner was adjudged to be imprisoned (and under which judgments he is now held) were "original package" sales only, therefore the writ must issue; and these facts, if proven on the hearing, must necessarily entitle petitioner to his release under the writ. But we have the authority of the supreme court itself for asserting that neither in terms nor in effect did that court declare the Iowa prohibitory statute in any particular null and void. In *Re Rahrer*, 140 U. S. 563, 11 Sup. Ct. Rep. 865, the supreme court, speaking of the scope and effect of the Leisy decision, say:

"This [the Leisy decision] was far from holding that the statutes in question were absolutely void, in whole or in part, and as if never enacted. On the contrary, the decision did not annul the law, but limited its operation to property strictly within the jurisdiction of the state."

The application herein must be held to include the exhibits attached to it, and made, by express reference therein, a part of it. The application contains no averment that in any of the cases whose judgments are so exhibited the courts decided adversely to the decision in the *Leisy Case*. There is brought to this court no recital of denial to petitioner of the full force, in the several cases and proceedings exhibited, of that construction of the Iowa law which obtains in the Leisey decision. So far as shown by this application for the writ, the jury, in the cases wherein a jury was impaneled, were charged by the court on the very lines as to "original packages" which the *Leisy Case* lays down. And, so far as in application shown, the court, in its findings in the contempt cases, held to the same construction of the Iowa statutes. And, in the absence of any statement in application to the contrary, this court is bound to presume that the district and circuit courts of said Wapello county did hold and charge correctly, in all respects, the law applicable to the trials and proceedings which terminated in the judgments exhibited. To presume otherwise would be to assume that which is not stated either in the application or in the various exhibits, which constitute its larger part; and we are bound to presume that the application states the matter in the strongest terms, and in the manner most favorable to the petitioner, in which the facts could be presented, and therefore the application brings before this court no question of law, as decided by the state courts in said cases complained of in application, which is to be, or, indeed, can be, decided in this proceeding.

The sole question remains under the application,—and which is a mere question of fact,—did the evidence submitted on the several trials, which resulted in the judgments exhibited, did this evidence as to selling or keeping for sale intoxicating liquors, justify the verdicts of guilty, as returned by the juries, and the findings of guilty of contempt, as decided by the courts? In other words, were the courts and jury justified, in the severals trials, in finding petitioner guilty on the facts proven on the respective hearings? For, the law having been, as we have seen, correctly held by the court, and the courts having had jurisdiction of the subject-matter and of defendant, and also having had authority to

render the particular judgments exhibited, there remains only the fact element,—the question of evidence. Petitioner may on each of the trials have testified in his own behalf. He may have introduced the testimony of other witnesses, and such evidence may have tended to prove the averments of petition, as to petitioner making sales only in "original packages." But the jury or courts, in the cases, respectively, tried before them, were the sole and rightful judges of the truthfulness and weight of the evidence submitted. They were authorized to accept or reject evidence, as they found it true or false. And they may have been abundantly justified in discarding the testimony of petitioner and his witnesses, and accepting evidence introduced by the prosecution, tending to prove guilt. As to this matter this court may not inquire. For this court cannot, upon *habeas corpus*, consider the sufficiency and comparative weight of evidence as establishing guilt or innocence. This court has no power to determine whether such evidence justified the verdict and findings reached. To do so is to assume appellate jurisdiction of these cases, and over the state courts which tried them. Upon the fullest hearing possible on *habeas corpus* this court could not review or re-examine the evidence which was submitted on trial; for, if this court were to hear evidence as to the facts, and the same evidence introduced on these trials were to be introduced here, what then? Shall this court assume to decide that the state courts or the juries therein erred in finding petitioner guilty? And should this court therefore find him not guilty, wipe out the judgments exhibited, and acquit him, and then release him from the custody of the sheriff in whose custody application avers him to be? The statement of this monstrous proposition is its complete refutation. But, on the other hand, were a hearing had under the writ applied for, and evidence as to fact submitted, the petitioner might not introduce evidence *not* introduced on the trials. Such hearing would not only be a new trial of the issues of fact, but, more objectionable still, it would be a new trial upon new evidence. It would not be an examination of the matters complained of. Had this new testimony been introduced on the former trials, possibly acquittal might have there resulted. Under any possible consideration of the subject, new testimony could not be here admitted as a basis for reversing the findings heretofore made and releasing petitioner. Here, again, the statement of the proposition is its refutation. The authorities abundantly sustain the position thus reached that this court cannot—certainly cannot on *habeas corpus*—hear evidence of facts bearing on the justice of the judgments complained of, or with reference to the guilt or innocence of the petitioner. I know of no authorities which hold to the contrary. *Ex parte Siebold,* 100 U. S. 377; *Ex parte Yarbrough,* 110 U. S. 651, 4 Sup. Ct. Rep. 152; *Ex parte Crouch,* 112 U. S. 178, 5 Sup. Ct. Rep. 96; *Ex parte Bigelow,* 113 U. S. 328, 5 Sup. Ct. Rep. 542. I find, therefore, that under the allegations of the application petitioner could not obtain his release if the writ of *habeas corpus* were to issue. Thus "it appears from the petition itself that the party is not entitled" to the writ. It is accordingly ordered that the rule to show cause be and it is discharged, and writ refused.