Minsharr, J.
The object of this proceeding is to reverse an order of the court of common pleas of Hamilton county, affirmed by the circuit court, remanding the plaintiff in error to the custody of the sheriff of the county, in a proceeding in habeas corpus, the return of the sheriff showing that the party had been committed to the jail of the county by a notary public for refusing to answer certain questions propounded to him, his deposition being taken at the time before the notary to be used as evidence in an action then pending in the Superior Court of Cincinnati; the suit being that of Charles A. Costello v. The Post Publishing Co., for an alleged libel published in the paper of the defendant, called “The Cincinnati Post.” The plaintiff in error, Joseph M. DeCamp, having been called as a witness by the defendant, was asked, among other questions, the following: “You have stated that you prepared the substance of the article published in the Miami Valley News and employed somebody else or got somebody else, to assist you in putting it into shape. I will ask you who that person was ?” After an exception to the question by the plaintiff as incompetent' and irrelevant, the witness answered, “Well, it was not Mr. Costello.” To which the counsel for the defendant said, “That does not answer the question. I did not ask you who *622 it was not, but who it was.” To this the witness answered, "Well, I have stated several times that Mr. Costello had noting to do with that article.” He was then asked if he refused to answer the question, and he answered that he did. Thereupon counsel for defendant said: “I shall ask the notary to order you to answer the question and I state that the article from which the matter complained of in the petition in this case was taken, referred to the article mentioned in the question in The Miami Valley News as the occasion for writing it, and charged Mr. Costello with having procured the article to be published. And we expect to show that the person who prepared the article, or assisted Mr. Costello in preparing it, was Otto Reich; that Otto Reich did prepare it, caused it to be typewritten and put in shape for publication, with the knowledge and in consultation with Mr. Costello; that the article itself was scurrilous, indecent and scandalous, and was the provocation for writing and publishing the article which is complained of in the plaintiff's petition. And therefore we desire the evidence for the purpose of proving, or aiding in the proof of, the above facts.”
He was then ordered by the notary to answer the question, but refused to do so.
Counsel for the defendant then stated that, before asking the commitment of the witness for his refusal to answer the above question, there were some other questions he wished to ask him. He then said, “You have stated that 300 copies or thereabouts of the article were sent to your house on Saturday, and on Saturday night distributed partly by the aid of persons you had requested to assist you in doing it. I ask you to state who these persons were?” The witness stated that Mr. Costello was not one of them, but refused to answer who they were. Counsel for the defendant then stated: “We shall offer testimony at the trial to show that the publication and distribution was made with the knowledge of, and in consultation with, the plaintiff in this action, and that the circumstances of such distribution to the families of Wyoming, including the family of the author of this article, constituted the provocation for the writing of the *623 article complained of, which refers to the article in The Miami Valley News and the manner of its distribution, as being in part an act of Mr. Costello. I shall therefore ask that the witness be compelled to answer the question, and I shall object to any statement of the witness as testimony being made until this question is answered.” The notary then ordered the witness to answer the question, and he still refused. At the conclusion of the examination, the notary adjudged the witness guilty of contempt in refusing to answer the above questions, and committed him to the jail of the count}' there to remain until he should testify as ordered.
It is claimed that the court erred in remanding the party on these grounds: (1), that no power is conferred on a notary by the statutes of Ohio, in taking a deposition, to commit a witness to jail for refusing to answer a question;' or, if this be not so, then, (2), such power being judicial in character cannot be conferred on a notary; and (3), the questions propounded the witness were incompetent and irrelevant, and furnished no ground for a commitment.
1. As to the first question, is such power conferred on a notary public by the statutes of the state. It is claimed that the only power possessed by a notary in such matters, is that conferred by section 119 Revised Statutes, giving to him the same power, in taking depositions, to punish a witness for refusing to testify, that is conferred on a justice of the peace; which power is conferred by sections 6541 and 6542 Revised Statutes. These sections empower a justice of the peace to impose a fine of five dollars upon a witness who refuses to testify before him in any matter in which he has power to require such witness to appear and testify. The power to imprison or to impose a greater fine than five dollars, is not conferred by these sections. If this were the' limit of the power conferred by statute, upon an officer in taking depositions, to deal with a contumacious witness, the argument would be conclusive. But we do not think so. The mode of taking testimony by depositions is provided for !n the part of our Revised Statutes, relating to civil procedure. Section 5269, designates the officers be *624 fore whom evidence in this form may be taken, and includes “a notary public.” Section 5252 provides, among other things, that “a refusal to answer as a witness, when lawfully ordered, may be punished as a contempt of the court or officer by whom-the attendance or testimony of the witness is required;” and section 5254 provides that “The punishment for the contempt mentioned in section 5252, shall be as follows: When the witness fails to attend in obedience to the subpoena, the court or officer may fine him in a sum not exceeding fifty dollars; in other cases the court or officer may fine the witness in a sum not exceeding fifty nor less than five dollars, or may imprison him in the county jail, there to remain until he submits to be sworn, testifies, or gives his deposition.” It is plain that by these sections a notary, as any other officer, empowered to take depositions, may imprison a witness in the jail of the county for a refusal to testify before him, when required to do so, and the imprisonment may be until he consents to do so; and this is not inconsistent with the power conferred on him by section 119, Revised Statutes. This section does not. purport to limit the powers of a notary public to those of a justice of the peace in matters of contempt, and is entirely consistent with a statute that confers on him other and greater powers in such matters, as is done 'by the section above referred to.
The fact that this construction seems to render the provision as to notaries, contained in section 119, unnecessary, is of no consequence, when we consider how the statutes of the state have been built up by the annual labors of the legislature, through a long series of years; and, so long as consistency is preserved by the legislature in making amendments to the laws, redundancy is a matter of -no-great moment.
2. It is next maintained that the imprisonment of a witness for refusing to answer a question, cannot be conferred on a notary, to be exercised in taking a deposition, because such power is,judicial in character, and is conferred by the -constitution upon the courts of the state. Article 4, section 1.
*625 It is a rule of general application that words used in a constitution are to be interpreted with reference to the usages and customs of the country at the time of its adoption. It will be presumed to have been adopted by the people with the understanding of its terms derived from such sources. Thus it is said, by White, J., in State ex rel. v. Harmon, 31 Ohio St., 250, that, “What constitutes judicial power, within the meaning of the constitution, is to be determined in the light of the common law and of the history of our institutions as they existed anterior to and at the time of the adoption of the constitution.” And so, in Merrell v. Sherburne, 1 N. H., 199, Woodbury, J., speaking of the constitution of his own state, says: “No particular definition of judicial power is given’in the constitution; and considering the general nature of the instrument, none was to be expected. Critical statements of the meanings, in which all important words were employed, would have swollen into volumes; and when those words possessed a customary signification, a definition of them would have been useless.”
The term “judicial power” as used in the constitution is not capable of a precise definition. It is included in the power to hear and determine, but does not exhaust the power. That it embraces the hearing and determination of all suits and actions, whether public or private, there can be no doubt. But we think that it is equally clear that it does not necessarily include the power to hear and determine a matter, that is not in the nature of a suit or action between parties. Power to hear and determine matters more or less directly affecting public and private rights, is conferred upon and exercised by administrative and executive officers. But this has not been held to affect the validity of statutes by which such powers are conferred. State ex rel. v. Hawkins, 44 Ohio St., 98-109. The term “judicial power” has never been taken with such latitude of construction in the usages and customs of our American commonwealths ; and to so extend the jurisdiction of the courts would lead to the most embarrassing results with little or no compensation whatever. The taking of depositions is *626 not only a very ancient, but, in many instances, pecessary method of obtaining evidence to be used in the trial of a cause. Without such means of obtaining evidence justice could not in many cases be done, as the attendance of the witness at the trial could not be secured; and, if the witness cannot be compelled by the officer taking the deposition to answer a proper question, the rights of a party might be sacrificed to the perversity of the witness. In states where, as in our own, the power is conferred by statute, it has frequently been exercised- by notaries and sustained by the courts. Dogge v. State, 21 Neb., 273, 278; In re Abeles, 12 Kan., 451; Ex parte McKee, 18 Mo., 599; Proffatt on Notaries, § 89; Giauque on Notaries, § 146,
The case of Kilbourn v. Thompson, 103 U. S., 168, is relied on by the plaintiff in error, but is not, as we think, in point. The case does not deny to either house of Congress the power to punish a witness for contempt, where the matter that is the subject of inquiry is within its jurisdiction. It is only when it it has no jurisdiction that the power is denied;- and, the matter then being inquired into, the indebtedness of Jay Cook & Co., being, as held by the court, within the jurisdiction of the courts of the United States, and not in that of congress, the commitment of Kilbourn for refusing to answer a question put to him by a committee of the house of representatives, touching that indebtedness, was held illegal.
This seems the first time the question has been presented to this court, though the statute conferring the power is of long standing. Any abuse is carefully guarded against, by the power given any judge by § 5255, Revised Statutes, on application of the witness, to discharge him if he find the imprisonment to be illegal.
Finally it is claimed that the questions put to the plaintiff in error as a witness, were incompetent, and, therefore, the commitment was illegal. It might be a sufficient answer to this to say that neither of the questions involved any question of privilege on the part of the witness, and no such privilege was claimed as an excuse for not answering; and it seems well settled that, whether the questions *627 are in other respects competent, is a matter for the determination of the court on the trial of the action in which the depositions are being taken. Ex parte McKee, 18 Mo., 599; People v. Sheriff, 7 Abb. (N. Y.) Pr., 96; The People v. Cassels, 5 Hill, 164; Bradley v. Veazie, 47 Maine, 85; Rapalje on Contempts, sections 66, 69, 70; Proffatt on Notaries, 202.
Here, however, the evidence sought by the questions seems to have been entirely competent. The action being for a libel, the defendant had the right, in mitigation of damages, to show provocation. He had the right to show a prior publication by the plaintiff of a provoking character, or that the plaintiff had been instrumental in the distribution of such a publication. This seems to be unquestioned law. Townshend, Slander and Eibel, section 414. “For the law makes .allowances for the infirmities of human nature and for what is done in the heat of passion, produced by the improper conduct of the adverse party.” Newell on Defamation, 519. The object of the questions that the witness refused to answer was, as appears from the statement of counsel, to show that the plaintiff in the action had assisted in the publication and distribution of a scurrilous, indecent and scandalous article in The Miami Valley News, and which provoked the publication complained of. It is true that the witness stated that Mr. Costello had nothing to do with it. This may have been true to the best of his knowledge, but may not have been true in fact. An answer to the questions would not therefore necessarily have tended to impeach him. The person who assisted the witness may have been instigated by Mr. Costello. The defendant had, therefore, the right to know who assisted the witness in the publication and distribution of the article in The Miami Valley News, as such information might have enabled him to connect the plaintiff with the publication and distribution of the article in that paper. Hence, both questions were competent, and should have been answered.

ffidgment affitmed.