## EX PARTE MCKEE.

1. A commitment which states that the party committed was adjudged guilty of a contempt in refusing to answer questions while giving his deposition as a witness, "plainly and specially charges a contempt," although it does not in terms state that the questions were relevant or were decided to be relevant.
2. A notary public, being an officer authorized to take depositions, has authority under the 8th section of the act concerning "witnesses," (R. C. 1845,) to commit a witness for refusing to answer any questions other than those which it is his personal privilege to refuse to answer.

Application for a *habeas corpus*. The petitioner stated that he was illegally imprisoned in the jail of St. Louis county, under the pretended authority of a certain commitment issued by a notary public of said county. A copy of the commitment was annexed to the petition, and it was agreed that the legality of the imprisonment should be considered upon the application, in the same manner as if a writ had been issued to the jailor and returned. The commitment stated in substance that the petitioner was summoned before the notary to give his deposition as a witness, in a certain cause pending in the Circuit Court of Jackson county in this state, and that while in attendance certain questions, set out in the commitment, were propounded to him in relation to the authorship of a communication published in a newspaper of which he was editor, which he refused to answer, for which refusal he was by the notary adjudged guilty of a contempt, and committed to the county jail, there to remain until he should give the evidence. The commitment further stated that the only reasons assigned by the petitioner for his refusal to answer, were the following:
1. That he considered the authorship of the article a matter of

confidence.   2. That, in his opinion, the evidence called for was irrelevant to the matters in issue in the cause in which he was testifying.   3. That he believed the only object of taking his deposition was a political one.

The illegality of the imprisonment was alleged in the petition for a *habeas corpus* to consist in this : 1. That the questions were not relevant.   2. That it did not appear from the commitment that the notary had decided them to be relevant.   3. That a notary public was not an officer authorized by law to commit for such a contempt as was charged.

*S. A. Holmes*, for the petitioner.

*John M. Krum*, contra.

GAMBLE, Judge, orally delivered the opinion of the court.

The sixth section of the second article of the act concerning "*habeas corpus*" (R. C. 1845) provides, that it shall be the duty of the court or magistrate before whom any party is brought on a writ of *habeas corpus*, forthwith to remand the party, if it shall appear that he is detained in custody "for any contempt specially and plainly charged in the commitment by some court, officer or body having authority to commit for a contempt so charged."   The tenth section of the same article provides that "no court shall have power to enquire into the justice or propriety of any commitment for contempt, made by any court, officer or body, according to law, and plainly charged in such commitment, as hereinbefore provided."

Under these sections, whenever a party is brought before a court on a writ of *habeas corpus*, and the return shows that he is in custody under a commitment for contempt, the only questions to be considered are, 1, Whether the commitment plainly and specially charges a contempt, and 2, Whether it was issued by a court, officer or body having authority to commit for such contempt.

1. It has been agreed that the present application shall be considered as if a writ had been issued and returned, and if

such had been the fact, we would have the commitment, as it accompanies the petition, returned as the ground for holding the petitioner in prison.   The commitment states, that the notary adjudged the petitioner guilty of a contempt, and that the contempt consisted in a refusal to answer certain questions which are set out in the commitment.   As the questions are set out, it is insisted that, as a matter of law, a contempt could not be committed in refusing to answer them, because they were irrelevant to the matter in issue in the cause.   But it is to be observed, that the nature of the action is not stated in any of the papers before us, and therefore it is clearly impossible for us to decide upon the question of relevancy.

Again, the officer who takes a deposition, and who may know the nature of the action, when he requires a witness, under the penalty of imprisonment, to answer a question propounded to him, does in effect decide that it is a proper question, and one sufficiently relevant to the issue to require an answer.   The opinion of the witness, that the question is irrelevant, is entitled to no consideration.   If that is his only objection to answering it, there can no injury result to him from compelling him to answer.   If a merely frivolous or impertinent question were asked of a witness, the officer taking the deposition might not feel himself called upon to compel an answer ; but it would only be in a very plain case of impertinence, that he would undertake to decide that the witness should be allowed to avoid answering.   The court in which the cause is pending will, at the trial, reject irrelevant evidence, and it would greatly detract from the value of our statutes, which authorize the taking of depositions, if the question of relevancy was to be raised before and decided by every justice of the peace or other officer, who takes a single deposition in the cause, when he cannot know the aspect which the case will probably assume at the trial.   To allow the witness himself to pass upon the question of relevancy, and refuse to answer such questions as he thought irrelevant, would be to deprive the party of the testimony of every unwilling witness.

We are compelled to assume, in the present case, that the notary decided that the questions were proper and relevant, as he committed the witness for refusing to answer. There is no provision made for any record of such decision. The fact is here stated in the commitment. The warrant states that the notary adjudged the witness to be guilty of a contempt in refusing to answer the questions. This is a sufficient decision upon the relevancy of the questions.

The commitment specially and plainly charges a contempt, and under the sections of the *habeas corpus* act, the prisoner must be remanded, unless the other position assumed in his defence can be maintained, which is, that a notary public cannot commit for such a contempt as is here charged.

2. The act approved February 13th, 1847, gives to notaries public power to take depositions. The act approved March 3, 1851, provides that they shall have the same powers which are conferred on justices of the peace by the act concerning depositions, approved January 17, 1845. The sixteenth section of the act concerning depositions, (R. C. 1845,) provides that " every person, judge or justice of the peace in this state, required to take depositions, &c., shall have power to issue subpœnas to witnesses to appear and testify, and to compel their attendance in the same manner, and under the like penalties as any court of record of this state."

The eighth section of the act concerning " Witnesses," (R. C. 1845,) provides : " A person summoned as a witness and attending, who shall refuse to give evidence which may lawfully be required to be given by such person, on oath or affirmation, may be committed to prison by the court, or other person authorized to take his deposition or testimony, there to remain without bail until he give such evidence."

A notary public, then, being authorized to take depositions, and having the same powers for that purpose as are conferred on justices of the peace, may summon a witness before him, and may enforce his attendance, if he fails to attend ; and if he attends, and refuses to give evidence which may lawfully be

required to be given, the notary may commit him to prison until he give the evidence. The commitment in the present case states that the petitioner was summoned before the notary to give his deposition, and attended, and that he was committed to prison for a refusal to answer questions, there to remain until he should give the evidence which the questions called for. Under the statutory provisions above referred to, when it is insisted that the notary had no authority to commit, it is supposed that it can only be argued in support of such a position, that the questions which are set out in the commitment are not such as may *lawfully* be required to be answered. What, then, is the meaning of the words, "which may *lawfully* be required to be given?" It is sufficient to say in general terms that, so far as the witness himself is concerned, he may lawfully be required to answer any questions which it is not his personal privilege to refuse to answer. In some familiar cases, which it is not necessary to enumerate, evidence may be sought to be obtained from a witness, which it is his privilege to refuse to give, and which he cannot lawfully be compelled to give, however pertinent it may be to the issues in the cause. All evidence, which is not of this character, the witness may lawfully be required to give, even though it may not prove to be relevant or competent in the particular cause in which it is sought to be obtained. The objection to the relevancy or competency of evidence is for the parties litigant to make and not for the witness. It does not appear to have been claimed before the notary, nor is it here claimed, that any of the questions set out in the commitment belong to the category of privileged questions. This being the case, and the notary having decided that they must be answered, and having committed for the refusal to answer, it cannot, on an application for a *habeas corpus*, with any propriety be urged against his *authority* to commit that the evidence demanded was not relevant.

The application for a writ must be refused.