*In re* GEORGE A. HURON, *Petitioner.*

**No. 10802.**

COMMITTING WITNESS FOR CONTEMPT — *act conferring power of, on notaries public, unconstitutional.* A notary public has no power to commit for contempt a witness who, having been duly subpœnaed before him for that purpose, refuses to be sworn or to give his deposition; and the statute purporting to confer such power upon him is invalid. (Johnston, J., dissenting.)

Original proceeding in *habeas corpus.* Opinion filed April 10, 1897. *Petitioner discharged.*

*David Overmyer* and *S. B. Bradford*, for petitioner.

*Troutman & Stone* and *Thomas Berry*, for respondent.

JOHNSTON, J. A subpœna was issued by a notary public of Shawnee County and served upon George A. Huron, the petitioner, requiring him to appear before the notary and give testimony in a cause then pending in Franklin County. He appeared in obedience to the subpœna, but refused to be sworn : *First,* because he was a defendant in the action and an attorney of record, and expected to be present at the trial ; and, *second,* because the attempt to take his deposition was not made in good faith, or with any intention of using the deposition when taken, but was for the mere purpose of ascertaining in advance the line of defense and testimony of the defendants. An affidavit in behalf of the plaintiff was then filed, alleging good faith, and that the depositions were intended to be used upon the trial of the action and in an application for a receiver ; and, further, that the witness was a non-resident of the county where the action was pending. The petitioner still persisting in his refusal to testify, the notary held him guilty of contempt, and ordered that he be committed until he should be willing to be

sworn and to give his deposition. He petitions for release, insisting that the case was not one in which his deposition could be taken, and, further, that the notary public had no authority to compel him to testify.

As the petitioner does not reside in the county where the action is pending, the plaintiff was clearly entitled to take his deposition (Civil Code, § 346) ; and the fact that he has been named as a defendant, or that he is an attorney of record in the case, will not prevent the taking of his deposition. No such exceptions are expressed or implied in the statute. But, while these objections are not tenable, there remains the more important question whether a notary public may punish a witness for contempt in refusing to be sworn or to give his deposition. " By section 348 of the Civil Code, the general power, without any exception or limitation, is given to notaries public to take depositions." *Swearingen v. Howser*, 37 Kan. 128. Other provisions of the Code are, that the officer authorized to take depositions may issue subpœnas requiring witnesses to attend before him and give their depositions, and that the disobedience of a subpœna, or the refusal to be sworn and to answer as a witness, or to subscribe a deposition, when lawfully ordered, may be punished as a contempt of the court or officer by whom his attendance or testimony is required. If the witness fails to attend, provision is made for the issuance of an attachment commanding the arrest of the witness, and that he be brought before the court or officer. The punishment for the contempt, where the witness fails to attend in obedience to a subpœna, is a fine not exceeding fifty dollars. In other cases, the court or officer may imprison him in the county jail, there to remain until he shall submit to be sworn, testify, or give his deposition. Civil Code, §§ 326–332. Can the

notary exercise the power which the statute purports to confer?

It must be conceded that to try a question of contempt and adjudge punishment is an exercise of judicial power. Has that high judicial function been vested in notaries public? A majority of the court are of opinion that notaries public are not judicial officers, and that they cannot arrest and punish for contempt. The view of the court is, that the whole judicial power of the State is vested by the Constitution, and can only be vested in such tribunals as are therein prescribed. It provides that "the judicial power of this state shall be vested in a Supreme Court, district courts, probate courts, justices of the peace, and such other courts, inferior to the Supreme Court, as may be prescribed by law." Constitution, art. 3, § 1. It will be observed that the judicial power is placed in the courts expressly mentioned and any inferior courts that may be created by the Legislature; but is lodged in courts alone. Until a tribunal is created which rises to the dignity of a court, it cannot be vested with judicial power. A notary public is not a court in the sense in which the term is used in the Constitution. He is simply an executive officer, who is chosen with reference to the duties to be performed by officers of that class. No limit is placed upon the number of notaries the Governor may appoint in a county. The general authority conferred is to take proof and acknowledgment of deeds and instruments in writing, to administer oaths, to demand acceptance and payment of commercial paper and protest the same for non-acceptance or non-payment, and to exercise such other powers and duties as by the law of nations and commercial usage may be performed by notaries public. Gen. Stat. 1889, ¶ 3927. These duties, including the mere taking

of testimony by deposition, are not judicial in their character ; and in the commercial world a notary has not been regarded as a judicial officer. While the taking of testimony is incidental to a judicial proceeding, the notary, in taking the deposition, is not required to determine the relevancy and competency of testimony, but simply writes and authenticates the testimony given, with such objections as the parties desire to make. He is not designated as a court, nor clothed with the usual paraphernalia of such a tribunal. A court is said to be a tribunal organized for the public administration of justice at a time and place prescribed by law. No provision is made for pleadings, nor for the issuance of process by a notary, except to subpœna a witness to give his testimony. If the witness refuses to be sworn or to testify and is deemed subject to a charge of contempt, no rules are prescribed for a trial before the notary, nor is specific provision made for obtaining evidence in order to determine whether such witness is actually guilty of contempt. Up to the time of the refusal of the witness, at least, the notary is only an executive officer, and is exercising executive power. There is no such thing as a punishable contempt of executive authority. While an executive officer might be constituted a court, judicial power cannot be conferred on him as merely ancillary to the exercise of purely executive power. It is true that in *In re Abeles* ( 12 Kan. 451 ) it was stated that a notary might commit a recusant witness for contempt, but it does not appear that the constitutional phase of the question received much consideration, and the decision is not deemed to be controlling. It has since been accepted without serious dispute, and has been followed in other cases without much discussion. It is, therefore, the view of the court that the question has not before been authori-

tatively settled. Not every one who hears testimony and exercises discretion and judgment in a matter submitted to him is necessarily a judicial officer; and whether notaries public have the attributes and powers of courts is to be determined from the Constitution. Anciently, such officers were not clothed with judicial power; and when the Constitution was adopted they were not regarded as having power to punish for contempt, nor as being in any sense judicial officers. In *Whitcomb's Case* (120 Mass. 118), it was contended that a city council had such power. The statute undertook to confer it, but it was held to be ineffectual. It was said that under the common law a city council had no such power, and that, when the Constitution of the Commonwealth of Massachusetts was adopted, it was not part of the law of the land that municipal boards or officers had power to commit or punish for contempt. It was, therefore, held that they were not to be regarded as a part of the judiciary, and that a statute which undertook to confer such authority upon them was unconstitutional and void. It is asserted that, when our Constitution was adopted, notaries were not understood to have judicial power, and therefore were not within the contemplation of the people in providing for the creation of courts. In *Ex parte Doll* (7 Phil. 595), it was held that a United States Commissioner had not been given authority to arrest and punish recusant witnesses for contempt; and the judge, in disposing of the case, remarked that he very much doubted the power of Congress to invest a commissioner with such power. See, also, *In re Mason*, 43 Fed. Rep. 510; *In re Kerrigan*, 33 N. J. L. 344; *Rhinehart v. Lance*, 43 id. 311. The attempt of the Legislature to confer judicial power on a mere executive officer of the government must be

deemed to be invalid. As was said in *Langenberg v. Decker* (131 Ind. 486) :

"The authority to imprison resides where the Constitution places it, and the Legislature cannot give it residence elsewhere. The authority is essentially a judicial one, abiding in the courts of the land. As it is a judicial power, it is not created by the Legislature nor vested by that body. . . . Judicial power, like all sovereign powers, comes from the people and vests where the people's Constitution directs that it shall vest. The Legislature may name tribunals that shall exercise judicial powers, unless the Constitution otherwise provides, but the power itself comes from the Constitution, and not from the statute."

See, also, *Eastman v. State*, 109 Ind. 278 ; *Lezinsky v. Superior Court*, 72 Cal. 510. For these reasons, it must be held that a notary public is not a judicial officer, and that he has not been vested with power to commit and punish for contempt.

The writer is unable to concur in the views expressed or in the conclusion reached. Unlike some of the cases referred to, the power to arrest and punish for contempt does not rest on inferences and implications. The Legislature of our State has expressly provided that if a witness, who has been duly subpœnaed to appear and to give his deposition before a notary public, refuses to appear or to testify, he may be punished for contempt. It is competent for the Legislature to create as many judicial officers or tribunals as necessity or convenience suggests. The only limitation upon that power is that those created shall be inferior to the Supreme Court. Const., art. 3, § 1. Within that limitation, they may be given as much or as little power as the Legislature in its wisdom and discretion may provide. The fact that a very limited extent of judicial power is con-

ferred will not thwart the legislative purpose. It is not necessary that the person so clothed with judicial power shall be designated as a court in order to be a court within the meaning of the Constitution. *Malone v. Murphy*, 2 Kan. 250 ; *The State v. Young*, 3 id. 445. The objection that notaries public are not carefully chosen, and are not invested with the paraphernalia of courts, can have little weight. They are certainly selected with as much care as some of those expressly named in the Constitution. They are appointed by the chief executive officer of the State, are required to take an oath of office and give a bond, and are provided with a seal. To constitute them judicial officers, it is not necessary that a clerk and a bailiff should be provided. It is enough that they are vested with judicial authority and are authorized to act in a judicial capacity when deciding the matters submitted to them. It is immaterial that many of the duties of notaries public are ministerial, so long as they are not inconsistent with the judicial power vested in them. There is nothing incompatible between the ordinary duties of a notary and the exercise of authority in compelling witnesses to testify. The taking of testimony is an incident of a judicial proceeding ; and what could be more appropriate than that the notary, who is authorized to administer oaths and to take testimony, should be vested with the judicial function to enforce the authority conferred? The Legislature has undertaken to confer this power ; and, as the Constitution authorizes the Legislature to create inferior courts, and there is nothing in their general duties inconsistent with the judicial power, why may it not be conferred on notaries? In pursuance of the constitutional authority, judicial functions have been conferred on many officers and bodies ; police, municipal, criminal, and special courts have

been created, and some of them with quite limited jurisdiction. Judicial power has been conferred on the mayors of cities, coroners, clerks of the district courts, boards of county commissioners, election and other boards and officers, and an appeal is authorized to be taken directly from most of them to the district court. In *Mathews v. Comm'rs of Shawnee Co.* (34 Kan. 606), after naming several officers on whom judicial power has been thus conferred, it is stated : " Indeed courts may be created by statute in a great variety of ways ; and courts so created are not courts provided for by the Constitution, but are simply ' such other courts, inferior to the Supreme Court, as may be provided by law.' " That notaries public possess the power to compel a witness to appear and testify, has been the understanding of the profession since the Code was enacted ; and for nearly a quarter of a century the doctrine has received the sanction of this court. In *In re Abeles,* supra, it was expressly held that the power had been conferred ; and it was reaffirmed in *In re Merkle* (40 Kan. 27). The same doctrine was recognized in *In re Davis* (38 id. 408), and also in *In re Cubberly* (39 id. 291). The power of the Legislature to invest an officer with the mere power to try and commit for contempt, was the subject of special consideration in *In re Sims* (54 id. 1 ) ; and it was there held that such power might be conferred on an executive officer, providing the judicial duties were not inconsistent with those which the officer was required to perform. Chief Justice Horton, in his concurring opinion, said : " The Legislature has full authority to confer the power to imprison the witness for contempt, prescribed in paragraph 2543 (Gen. Stat. 1889), upon justices of the peace, probate judges, notaries public, clerks of courts, or any individual, not the prosecuting attorney, or interested in the proceed-

ing." The views expressed in the opinions in that case clearly sustain the validity of the law and the exercise of the power by notaries public. The cases relied on by the petitioner are based upon an absence of statutory authority ; and all concede that without such authority a notary public or other inferior judicial officer cannot commit or punish for contempt. Of course, as United States commissioners belong to that class, and there being no act of Congress conferring the right to try and punish for contempt, the courts of necessity held that no such power existed. In Works on Courts and their Jurisdiction, 501, it is stated that notaries public, and like officers authorized to take depositions, do not possess the power to punish a witness for contempt, unless there is a statute conferring it. After stating that a question exists whether such power can be conferred by statute, it is remarked : "It is believed, however, that it may properly be conferred, at least so far as it authorizes such officer to enforce obedience to a subpœna to procure a deposition that he is authorized to take. It is apparent from the later decisions on the subject that the power to punish has been greatly extended as respects courts and tribunals which may exercise the power, and has, as a rule, been recognized in all courts and tribunals exercising judicial functions, no matter what their grade or the limitations placed upon their jurisdiction." The ruling of the court in the present case leads to the result that, under the law as it now exists, no witness can be compelled to attend and give his deposition: A notary has the same authority under the statute as a judge of a court of record, a justice of the peace, or other officer authorized by the statute to take depositions. In such cases, judges and justices of the peace act independently of the courts with which they are connected, and their

powers in respect to contempt proceedings are based alone upon the statute in question.

The following cases sustain the view of the writer, that a notary public is authorized to try and punish for contempt: *Ex parte McKee*, 18 Mo. 599 ; *Ex parte Mallinkrodt*, 20 id. 493 ; *Ex parte Priest*, 76 id. 229 ; *In re Jenckes*, 6 R. I. 18 ; *Dogge v. State*, 21 Neb. 272 ; *Ex parte Krieger*, 7 Mo. App. 367 ; see, also, *Norton v. Graham*, 7 Kan. 166 ; *Prell v. McDonald*, 7 id. 450 ; *Morris v. Vanlaningham*, 11 id. 269, *In re Johnson*, 12 id. 102.

The majority of the court, however, entertaining a different view, and having reached a different conclusion, it follows that the petitioner must be discharged.

Doster, C. J., and Allen, J., concurring.

Johnston, J., dissenting.