THE PEOPLE OF THE STATE OF NEW YORK ex rel. GORDON MAC-DONALD, Respondent, *v.* LOUIS LEUBISCHER, Appellant.

CLARENCE H. VENNER, Appellant.

*A commissioner appointed by the court of a foreign State has no power to commit a recalcitrant witness to jail in the State of New York — power of the Legislature.*

A mandate issued under section 920 of the Code of Civil Procedure by a notary public of the State of New York, appointed under the laws of another State a commissioner to take the testimony of a witness residing in the State of New York in an action pending in such other State, which recites that certain pertinent and proper questions were propounded to the witness and that the wit-

ness refused and continues to refuse to answer each and every of said questions, but does not in terms adjudge the witness guilty of contempt, and which commands the city marshal to place the witness in the custody of the sheriff and directs the sheriff to receive him into his custody and to confine him in the county jail "until he shall submit to answer the said questions and each thereof, so put to him by counsel for plaintiffs in said action, or is otherwise discharged according to law," does not constitute due process of law and is void.

The Legislature of the State of New York has no power to confer upon an individual, who has no judicial power vested in him either by the Constitution or the Legislature of that State, and is not connected in any way with any of the courts or bodies thereof in whom the judicial power is vested, the authority to issue a process by which a person may be deprived of his liberty or his property.

BARRETT, J., dissented.

APPEAL by the defendant, Louis Leubischer, and Clarence H. Venner, the party at whose instance the relator was arrested, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of May, 1898, discharging the relator from custody.

*John W. Hutchinson, Jr.*, and *George H. Yeaman*, for the appellants.

*David McClure* and *William Jay*, for the respondent.

*William V. Rowe* submits a brief for the respondent.

INGRAHAM, J.:

The relator, being in custody of the respondent, a marshal of the city of New York, presented his petition to the Supreme Court, alleging that his imprisonment or restraint is by virtue of a certain paper writing, purporting to be a mandate signed by one Edward J. McCabe, commissioner and notary public, and that said McCabe, as such commissioner and notary public, possesses no power or authority whatever under or by virtue of any valid statute, or other law of the State of New York, to issue a mandate in the nature of that annexed to the petition, and he prayed for a writ of habeas corpus to inquire into the cause of his imprisonment. By the return of the marshal it appeared that the relator was arrested and is detained by virtue of a writ to him directed, a copy of which is annexed to the return. This writ is entitled

" In the Matter of the Commission to take the Deposition of Gordon MacDonald and others, issued to Edward J. McCabe, a notary public in and for the county and city of New York, on the 26th day of March, 1898, by the District Court of Arapahoe county, Colorado, in a certain action therein pending " between Clarence H. H. Venner and others and the Denver Union Water Company and others. It is issued in the name of the People of the State of New York and directed to the respondent Louis Leubischer, as marshal of the city of New York, and to the sheriff of the county of New York, and recites that the person granting the mandate, a notary public of the State of New York, in and for the county of New York, on the 26th day of March, 1898, by a commission duly issued out of and under the seal of the District Court of Arapahoe county, Colorado, appointed a commissioner in a certain action therein pending, wherein Clarence H. Venner and others are plaintiffs, and the Denver Union Water Company and others are defendants, to take the depositions of Gordon MacDonald and others, witnesses in said commission named, on behalf of the plaintiffs in said action ; that on the 4th day of April, 1894, a subpœna was duly signed or issued by the Hon. JOHN J. FREEDMAN, one of the justices of the Supreme Court of the State of New York, directed to the said Gordon MacDonald, commanding him to appear before the said Edward J. McCabe, as such commissioner, on the 11th day of April, 1898, to be examined and give his deposition at the instance of the plaintiffs in said cause, which said subpœna was duly served upon said Gordon MacDonald. That in obedience to said subpœna the said Gordon MacDonald attended before the said commissioner and was by him duly sworn as a witness in said cause, in the form prescribed by law, and in obedience to said subpœna and the direction of said commissioner, attended before said commissioner from day to day thereafter and on this day ; that certain pertinent and proper questions were propounded to said witness by counsel for the plaintiffs in said cause as follows, to wit : ·Then follows a statement of various questions asked of the said witness ; that said MacDonald refused, " and on this day continues to refuse, to answer each and every said question hereinbefore set forth without giving any reason or excuse for such refusal, except that he was advised by his counsel not to answer the same, and that the facts

sought to be elicited by said questions related to matters of trust committed to the Continental Trust Company of the city of New York, of which it is an officer;" and that said Clarence H. Venner, one of the plaintiffs in said action, at whose instance the said Gordon MacDonald attended as such witness, made oath that the testimony of said witness in answer to the questions so propounded was so far material that without it the plaintiffs in said cause could not safely proceed with the trial thereof.    The mandate then directed and commanded the said marshal forthwith to convey the said Gordon MacDonald into the custody of the said sheriff, and the said sheriff was thereby required to receive the said Gordon MacDonald into his custody in the jail of New York county and him there safely keep and closely confine until he shall submit to answer the said questions and each thereof, so put to him by counsel for plaintiffs in said action, or is otherwise discharged according to law and was signed.

"Given under my hand as commissioner and notary public aforesaid, this 26th day of April, 1898.

"EDWARD J. McCABE,
*Commissioner and Notary Public.*"

There is annexed to said warrant a copy of a commission issued in the name of "The People of the State of Colorado to Edward J. McCabe, Notary Public in and for the County and State of New York, greeting," which recites that certain persons named are material witnesses in a certain cause now pending in the District Court of Arapahoe county, State of Colorado, wherein Clarence H. Venner and others are plaintiffs, and the Denver Union Water Company and others are defendants; that witnesses reside at New York, in the county and State of New York, and that their personal attendance cannot be procured at the trial of said cause, and that the depositions of said witnesses are desired by the plaintiffs, pursuant to an order of court entered in said cause on the 18th day of February, 1898, and appointing said McCabe to examine the said witnesses, and authorizing and requiring him to cause said witnesses to come before him at such time and place as he might designate and appoint, and diligently examine said witnesses on the oath and affirmation of said witnesses, and faithfully to *take the depositions*

*of said witnesses upon all interrogatories and cross-interrogatories in respect to the questions in dispute;* and said commission was issued in the name of Elias F. Dunlevy, clerk of the District Court of Arapahoe county,. Colorado, and the seal thereof at Denver, in said county and State, and signed "Elias F. Dunlevy, Clerk. H. W. Harmann, Deputy." Annexed to the mandate is the affidavit of Clarence H. Venner, one of the plaintiffs in the action, reciting the issuance of the depositions; the subpœna requiring the relator to appear before the commissioner and testify, issued by one of the justices of the Supreme Court; the service of said subpœna upon the relator; the attendance of the relator before the commissioner; the questions asked by the relator by counsel for the plaintiff; the refusal of the relator to answer those questions, and a statement by the affiant that each and all of said questions were pertinent and proper, and that the testimony of the said McDonald, in answer to said questions and each thereof, is so far material that without it the plaintiffs in said cause pending in said District Court in the State of Colorado cannot safely proceed with the trial of said action. There is also annexed to the said warrant a subpœna with proof of service issued by one of the justices of the Supreme Court. Upon the hearing upon this writ and return before a justice of the Supreme Court, the relator was discharged upon the ground that McCabe had no power to commit a witness to jail for refusing to answer questions propounded to him, and the question before us is as to the sufficiency of this alleged mandate of the commissioner to justify a detention of the relator until he should have obeyed the orders of the commissioner and answered the questions propounded to him.

The mandate itself does not, in terms, adjudge this relator guilty of a contempt, nor does the commissioner appear to have passed upon the materiality of the questions that the relator was required to answer. Indeed, it does not appear that he had power under the commission to determine that question, as he is required to take the depositions of the witnesses upon "all interrogatories and cross-interrogatories in respect to the questions in dispute." Nor does it appear that the relator had notice of the application to the commissioner to issue this warrant, or had an opportunity to be heard before he was summarily arrested and deprived of his liberty. The commission is directed to the commissioner, describing him as a notary

public in and for the county and State of New York, and it appears from a paper annexed to the petition that he was selected by consent of the parties as the commissioner before whom this testimony was to be taken. The commission seems to have been issued by the clerk of the court by the consent of the parties to that action, and whatever power this commissioner had was conferred upon him by his appointment as commissioner by the court of the State of Colorado, and under the power thus conferred upon him he is carrying out a mandate of such State within this State. He is not acting under any power conferred upon him by any court or judge of this State. It is claimed that the power which he exercised is conferred upon him by the provisions of section 920 of the Code of Civil Procedure. By article 3, title 3 of chapter 9 of the Code, provision is made for taking depositions within this State to be used without the State. By section 914 of the Code it is provided that "a party to an action, suit, or special proceeding, civil or criminal, pending in a court without the State, either in the United States, or in a foreign country, may obtain, in the manner prescribed in this article, the testimony of a witness within the State, to be used in the action, suit, or special proceeding."

By section 915 of the Code, it is provided that a justice of the Supreme Court, or a county judge, may issue a subpœna to a witness commanding him to appear before the commissioner named in the commission. By section 919 of the Code, it is provided that "the officer before whom a witness appears, in a case specified in this article, must take down his testimony in writing, and must certify and transmit it to the court, in which the action, suit or special proceeding is pending, as the practice of that court requires;" and by section 920 of the Code it is provided that "a person who fails to appear at the time and place specified in a subpœna, issued as prescribed in this article, and duly served upon him; or to testify; or to subscribe to his deposition, when correctly taken down; is liable to the penalties which would be incurred in a like case if he was subpœnaed to attend the trial of an action in a Justice's Court; and, for that purpose, the officer before whom he is required to appear possesses all the powers of a justice of the peace upon a trial." By section 3001 of the Code it is provided that where a witness, attending before a justice in an action, refuses to answer a pertinent

and proper question, and the party at whose instance he attended makes oath that the testimony of the witness is so far material that without it he cannot safely proceed with the trial of the action, the justice may, by warrant, commit the witness to the jail of the county, and by section 3002 of the Code it is provided that "the recusant witness must be closely confined, by virtue of the warrant, until he submits to be sworn or affirmed, or to answer, * * * as the case may be; or is otherwise discharged according to law." In a late case in the Court of Appeals (*Matter of Searls*, 155 N. Y. 333) it was held that a justice of the Supreme Court who had issued a subpœna requiring a witness to attend before a commissioner had no power to punish such witness for a refusal to answer a question put to him in the course of the proceeding; that, as a justice of the peace at a trial had power to punish a witness who refused to appear or to answer a proper question by fine or imprisonment, the witness must be compelled to testify by the commissioner before whom he was examined or not at all, and while the justice of the Supreme Court who issued the subpœna could doubtless have punished the defendant for any disobedience of the order to appear before the commissioner, he had no power to punish him for refusing to answer questions in the course of the examination; that the mandate of the justice of the Supreme Court requiring the witness to appear before the commissioner was satisfied when the witness appeared to testify; that the contempt charged was a contempt of the authority of the commissioner acting under the commission and the laws of this State which provided for its due and proper exercise; that the witness could not be required to answer for it except under the provisions of section 920 of the Code in the manner, and before the officer, there designated. We are now presented with the question whether the Legislature had the power to confer upon a commissioner appointed by the courts of another State to take testimony in this State power to punish a witness appearing before him for a refusal to answer any question that the party to the action swears is material and necessary upon the trial of the action in the other State and by a warrant directed to a sheriff to imprison such witness until he should comply with the directions of the commissioner. By section 1 of the fourteenth amendment to the Constitution of the United States it is provided, "Nor shall any State deprive any person of life, liberty

or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." By section 6 of article 1 of the Constitution of the State of New York it is provided that "no person shall be   *   *   *   deprived of life, liberty or property without due process of law." The relator claims, and the court below has found, that this warrant is not due process of law. This relator has been deprived of his liberty by a mandate of a commissioner who is appointed by the court of a foreign State to take testimony within this State. That commissioner derived no authority and does not exercise any judicial function under the laws of the State of New York. He is not connected in any way with the administration of justice in this State. The process that he has issued is to enforce an order of the court of the State of Colorado directing him to take the evidence of this relator and transmit it to such foreign court for the purpose of the trial of that action in such court. His power to act is derived entirely from the appointment of the court of another State. The action in which he assumes to act is pending in the court of another State. Is his warrant, commanding a sheriff or marshal to arrest a person who has been summoned before him as a witness, issued by such a person, due process of law in this State? I think it is not. As before stated, the warrant does not in terms adjudge the relator guilty of contempt. It recites that certain pertinent and proper questions were propounded to the witnesses; that the witness refused and continues to refuse to answer each and every of said questions, and thereupon commands the marshal to convey the said relator to the custody of the sheriff of the city and county of New York and commands the said sheriff to receive the said relator into his custody into the jail of New York county and to safely keep and closely confine him in such jail until he shall submit to answer the said questions and each of them. To justify such a warrant it must be made to appear that the person arrested under it was in contempt or had violated some lawful mandate of some officer with authority to propound the question, and this relator could only be deprived of his liberty by due process of law. In the judicial discussion in cases in which this provision of the Constitution of the United States and the Constitution of the State of New York has been under consideration, it has been universally held that due pro-

cess of law is " law in its regular course of administration through courts of justice." (Bouv. L. Dict., under the head of " Due Process of Law.") The Court of Appeals of this State in the case of *Westervelt* v. *Gregg* (12 N. Y. 209), say : " Due process of law undoubtedly means, in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights ; " and in the case of *Wynehamer* v. *The People* (13 N. Y. 395) Judge Comstock says : " The better and larger definition of due process of law is, that it means law in its regular course of administration through courts of justice." We have it thus authoritatively determined that the process of law without which no man can be deprived of his liberty is process issued in the regular course of the administration of the law through courts of justice. By the Constitution of this State the judicial power is vested in certain courts there named, with authority to the Legislature to establish other courts with limited jurisdiction, and the judicial power is exclusively vested in these courts. In *Kilbourn* v. *Thompson* (103 U. S. 190) Mr. Justice Miller, in delivering the opinion of the court, said : " It is believed to be one of the chief merits of the American system of written constitutional law that all the powers intrusted to government, whether State or National, are divided into the three grand departments, the executive, the legislative and the judicial ; that the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined." Judge Rapallo, in delivering the opinion of the Court of Appeals in the case of *People ex rel. McDonald* v. *Keeler* (99 N. Y. 480), says : " The Constitution of the United States declares, in terms, that the judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may, from time to time, order and establish. Although no similar declaration is contained in the Constitution of this State, still it is a recognized principle that in the division of power among the great departments of government, the judicial power has been committed to the judiciary, as the executive power has been committed to the executive department, and the legislative to the Legislature, and that body has no

power to assume the functions of the judiciary to determine controversies among citizens, or even to expound its own laws so as to control the decisions of the courts in respect to past transactions." Turning to the Constitution of this State we find that by article 3 it is provided that the legislative power of the State shall be vested in the Senate and Assembly. By article 4, it is provided that the executive power shall be vested in a Governor, and article 6 provides for the judicial power and the courts in which it is vested. By that article a Supreme Court is constituted with general jurisdiction in law and equity. The Court of Appeals is constituted to review the decisions made by the Supreme Court. County Courts and inferior courts of record are established and the Constitution regulates the appointment and election of judges of these courts. There is also provision for the election of justices of the peace, with power given to the Legislature to establish civil and criminal courts not of record. In addition to the judicial powers granted by article 6 of the Constitution certain powers, in their nature judicial, are by the express terms of the Constitution vested in the Legislature. In the case of *People ex rel. McDonald* v. *Keeler (supra),* when the question as to the constitutionality of an act of the Legislature giving to the legislative bodies a power to punish for contempt was before the court, the court upheld the constitutionality of the statute only upon the ground that the statute in question was to enforce the powers in their nature judicial which were by the express terms of the Constitution vested in the Legislature. A careful study of the opinion in that case makes it clear, I think, that an act of the Legislature authorizing an executive officer of the State to commit a person to jail for a contempt in refusing to obey his mandate, or refusing to answer questions propounded by him to a person called before him would be unconstitutional, as a warrant to enforce such a statute would not be due process of law within the meaning of the Constitution. The power of the Legislature to pass an act authorizing one of the legislative bodies to commit for a contempt was upheld, because the Constitution having invested the Legislature with certain powers in their nature judicial the Legislature could by appropriate legislation provide for the proper exercise of such powers. The court say at page 482: " It is a limited power, and should be kept within its proper bounds, and,

when these are exceeded, a jurisdictional question is presented which is cognizable in the courts." The same principle was established in *Kilbourn* v. *Thompson (supra)*. It appears, therefore, to be settled that by the Constitution judicial power is vested in the courts established by or provided for in the Constitution and in other officers or bodies where the Constitution, by express provision, vests in such other officers or bodies powers in their nature judicial; that the judicial power is exclusively vested in these officers or bodies thus expressly designated by the Constitution, and that the Legislature has no power to vest in other bodies or departments of the government judicial powers or to authorize such other departments or officers of the government to issue process which shall be due process of law. We come then to the question as to whether or not authority given to an individual who is not connected with the administration of justice in this State, who has no judicial power vested in him by either the Constitution or the Legislature, not connected in any way with any of the courts or bodies in whom the judicial power is vested, can be authorized by the Legislature to issue a process which shall be due process of law by which an individual may be deprived of his liberty or his property. It can hardly be claimed that this "commissioner and notary public" is connected with the judicial department of the government of this State. He does not act by virtue of his holding the office of notary public within this State. The addition of that title to his name is merely *descriptio personæ.* He is not appointed by any State authority, but is appointed by the court of a foreign State. He may as well be a citizen of the foreign State owing it his allegiance. He receives no compensation for his services from the State or under the laws of this State. He is not under the control of any of the officers or departments of the State government. He cannot be punished for an abuse of his power by this State. No appeal from his decision can be taken to any of the courts of this State. He acts without responsibility to any official or department of the State government, and while he does not formally adjudge a person whom he has determined to imprison in contempt under his warrant, uncontrolled by those officers selected by the people to administer the judicial power of the State, his mandate takes from a citizen of this State his liberty, and from that mandate the citizen

has no appeal.    If the Legislature of this State has power to confer
upon this "commissioner and notary public" power by a warrant to
commit to prison any citizen of this State who has refused to obey
his directions in regard to an examination under a foreign com-
mission issued to take testimony in this State, I can see no reason
why a Legislature might not grant to the Governor, or to the mayor
of the city of New York, or to the agent of a Governor of any other
State or Territory appointed to execute some functions within this
State the power to arrest and imprison ; and that a person arrested
or imprisoned under such a mandate would have no redress.
The court, upon a writ of habeas corpus, could not review the
action of the commissioner or other person authorized to issue
such a mandate, so long as such person acted within the jur-
isdiction conferred upon him by the act of the Legislature,
for, by section 2033 of the Code, it is provided that if it appears
upon the return that a prisoner is in custody by virtue of a mandate
in a civil cause, he can be discharged only in one of the cases
specified, neither of which would authorize the court to review the
action of the individual issuing the mandate. so long as that officer
acted under the power conferred upon him by law.  By sub-
division 6 of this section it is provided that the prisoner can be
discharged only where the mandate is not authorized by a provision
of law.    In other cases where the Legislature has given to a public
body a right to call witnesses or ascertain questions of fact, it is the
Supreme Court or a justice thereof who is authorized, upon the
application of such body or officer, to require a person so called as a
witness to answer proper interrogatories, and upon the failure to obey
this direction of the court, or a justice thereof, authority is given
to punish for contempt; but in that case it is the direction of
the court or judge before whom the witness is brought that is
enforced, and thus around such individual is placed the safeguard
of a determination by a judicial officer vested by the Constitution and
laws with the power to determine judicial questions, and his man-
date would undoubtedly be due process of law.  But, by this legis-
lation, construed as it has been by this commissioner, there is
attempted to be given to an individual, who, so far as appears, is a
citizen of another State, acting under the authority conferred
by another State, authority to come within this State, and by

his simple warrant deprive a citizen of this State of his liberty. That it could have been the intention of the Legislature to invest such an officer with such power, seems to me to be impossible to believe; but whether it was such intention or not, it seems to me clear that any attempt to give to such a person such power in this State would be in violation of the express provisions of the Constitution before cited, and would subject a citizen of this State to indefinite imprisonment without due process of law. It is said that this mandate not adjudicating the relator guilty of contempt does not assume to punish him for an offense, but simply detains him until he answers the questions which are material in the action in the State of Colorado. In effect, however, the mandate deprives the relator of his liberty until he obeys the order of the commissioner. If the Legislature has power to authorize a person not charged with the administration of justice to enforce his orders to answer such questions as may be asked by a mandate requiring the imprisonment of a citizen refusing obedience to such orders, I can see no reason why the Legislature cannot give to any person power to enforce any orders that he may give by a similar process. Section 920 of the Code gives no power except to impose a penalty. It provides that a person who fails to appear, or to testify, or to sign his testimony, is liable to the penalties which would be incurred in a like case if he was subpœnaed to attend the trial of an action before a justice of peace, and for that purpose, viz.: To impose such penalties, the officer before whom he is required to appear possesses all the powers of a justice of the peace upon the trial. The commissioner is, therefore, only given power to impose a penalty or to punish for refusal to testify, and I do not think the Legislature can confer such power upon this individual.

For this reason, I think the mandate under which the respondent acted in arresting the relator was absolutely void, and the order appealed from should be affirmed, with ten dollars costs and disbursements.

RUMSEY and McLAUGHLIN, JJ., concurred; BARRETT, J., dissented.

RUMSEY, J.:

I concur in the conclusion reached by Mr. Justice INGRAHAM in his opinion; and in view of the importance of the question to be

determined, and the fact that the members of the court are not unanimous, it is not improper that I should state the reasoning by which I reach the same conclusion. In this proceeding we are called upon to determine the validity of a commitment issued by a commissioner of a foreign court, consigning a citizen of this State to prison until he shall obey the instructions of the commissioner by answering a question which this commissioner has determined to be a pertinent and proper one. The single question presented to us is whether or not the commitment is valid. We are not called upon to determine whether the question which this relator is called upon to answer is in fact pertinent and proper to the determination of the litigation in which he is sworn as a witness. That question has been determined once for all by the commissioner upon whom the statute puts the duty of deciding it. (*Matter of Searls*, 155 N. Y. 333, 340.) Indeed, there is no way in which the determination of the commissioner in that regard can be reviewed. However impertinent, irrelevant, immaterial, or even indecent a question may be the law not only puts upon the commissioner the duty, but gives him the power to say that it is relevant and proper, and no court in this State has any authority to review his determination. Having the power, if he determines that the question is pertinent and proper, and the party procuring the examination makes the affidavit required by section 3001 of the Code, the witness must answer; or, if he refuses to answer, he is committed to prison. It is idle to say that the power to commit one to prison under such circumstances does not touch the liberty of the person who is confined there by virtue of it. A power which can impose upon any citizen the necessity to give information about his most private affairs in a matter in which he is not at all concerned, at the peril of imprisonment if he refuses, certainly affects his liberty in an eminent degree. It will not do to say that he may relieve himself of the imprisonment by answering the question. Whenever one is committed for refusal to perform an act he can get free by doing it, but no court has ever suggested that fact as a reason for sustaining the commitment. The fact that he is compelled involuntarily to perform a certain act, or to subject himself to imprisonment, necessarily affects his liberty. He is, therefore, entitled to the protection of that article of the Constitution which prescribes that no man

shall be deprived of his liberty without due process of law. It is not necessary for me to consider the elements necessary to constitute due process of law. I concur in the definition of Mr. Justice INGRAHAM from which it clearly appears that to constitute that process it is essential that there should be a hearing before some officer who is properly authorized to pass upon the questions necessary to be determined, before the imprisonment can be inflicted. Was there such a hearing in this case? The proceeding in which this commitment was granted was not one originated or pending in the courts of this State. It was begun in a District Court in the State of Colorado ; that portion of it which is to be performed in this State was originated by an order of that court, is pending under the direction of that court, and may be brought to an end at any time when that court sees fit to do so. The person before whom it is conducted, although he happens to be a notary public of this State, gets no power to act from any of the constituted authorities of this State. He is in no sense a judicial officer, even if he can be said in any just sense to be an officer at all. He takes no oath of office. The Constitution provides the way in which officers shall be elected or appointed (Art. 10, § 2), and no one can hold any office in this State until he has been chosen to it in one of the ways thus prescribed. Nothing of the sort is pretended to have been done in the case of this commissioner. His appointment is derived solely from the court of Colorado, and he would have the same power to do this act sought to be reviewed, whether he were a citizen of this State or of Colorado, or of any other country in whose court the deposition is to be taken. Having been thus appointed, section 920 of the Code of Civil Procedure has given to him the powers of a justice of the peace upon a trial, and it is by virtue of that provision of the statute that he has made this commitment. The authority he professes to exercise is that given to a justice of the peace by section 3001 of the Code of Civil Procedure, which provides that where a witness attending before a justice in the action refuses to answer a pertinent and proper question, and the party at whose instance he attended makes oath that the testimony of the witness is so far material that without it he cannot safely proceed with the trial of the action, the justice may by warrant commit the witness to the jail of the county. The nature of this power it is not very material

to consider. I have no doubt that it is a power to punish as for a contempt of court. It is so spoken of and regarded by all the cases with which I am familiar. (*Rutherford* v. *Holmes*, 66 N. Y. 368; *Whitcomb's Case*, 120 Mass. 118; *People ex rel. McDonald* v. *Keeler*, 99 N. Y. 463.) But whether it is a power to punish as for a contempt of court or not, it certainly is a power to commit a person to the county jail until he shall perform an act which he is unwilling to do, and which he is required to do by the official who signs the commitment. Before that commitment can be signed, it is necessary that there should be a determination of the commissioner that the question is material and proper. (*Matter of Searls*, 155 N. Y. 333, 340.) That determination lies at the foundation of the power to commit. Until that is made the witness cannot be compelled to answer, nor can he be committed for a refusal to answer unless that conclusion has been reached by the commissioner. Although the witness may be examined upon interrogatories settled by the court of Colorado, its allowance of interrogatories is a matter of no importance. For the purposes of this proceeding the question is not pertinent and proper unless it has been so determined by the commissioner named in the commission issued out of that court. It is clear, therefore, that at the foundation of this proceeding there lies the necessity to determine a pure question of law, and the power to determine that question is clearly judicial in its nature. Indeed, the power to punish for contempt is judicial in its nature, and only arises in a judicial proceeding, and can only be exercised under the law of the land by a competent judicial tribunal which has jurisdiction in the premises. (6 Am. & Eng. Ency. of Law [2d ed.], 1058; *Interstate Commerce Commission* v. *Brimson*, 154 U. S. 485.) This conclusion was reached by the Supreme Court of Massachusetts in *Whitcomb's Case* (120 Mass. 118), in which the question presented was whether a power given to the common council of the city to commit and punish for contempt was within the authority of the Legislature. It appeared in that case that one Whitcomb had been summoned to testify before a special committee of the common council of the city of Boston, which had been appointed with full powers to investigate and report upon charges against members of the common council for violation of their duties; and that as such witness a certain material

question was propounded to him, which he refused to answer.
Thereupon, in pursuance of the authority given by the statute, he
was committed to the county jail for a certain time, unless he should
sooner express his willingness to appear and answer. Upon a habeas
corpus, the sole question presented to the court was, whether the
authority given to the common council to commit for contempt in
that proceeding was within the power of the Legislature. Chief
Justice Gray, in examining the question, determines, in the first
place, that this power thus given to the common council was a
power to punish for a contempt, and that that was a judicial power.
The conclusion reached by the court was, that the Legislature could
not delegate to or confer upon municipal boards or officers that are
not courts of justice, the authority to imprison and punish without
right of appeal or trial by jury, and that the statute which conferred
that power upon the common council was unconstitutional. I can-
not see any distinction in principle between that case and the one at
bar. (See, also, *Langenberg* v. *Decker*, 131 Ind. 471; *In re Huron*,
58 Kans. 152.) The nature of the power to punish for contempt
has been frequently examined in the courts of this country and of
England; and it is universally held that such power is judicial
in its nature, and that except as it may inhere in certain legislative
bodies when they are engaged in investigations which are judicial
in their character, it can only be exercised by judicial officers.

In addition to the cases cited above there may be cited upon that
principle : *Kielley* v. *Carson* (4 Moore P. C. 63); *Kilbourn* v. *Thomp-
son* (103 U. S. 168); *Burnham* v. *Morrissey* (14 Gray, 226). It may
be said that this power has been given by the Legislature to many
boards and officers whose duties are not judicial. The question of
the constitutionality of those statutes is not before us. In that
regard it is only sufficient to say, as was said by Judge Gray in
*Whitcomb's* case, that the constitutionality of the provision com-
mitting to masters in chancery and auditors the power over wit-
nesses to punish them for contempt may admit of more doubt.

The single question presented here is whether this particular
power given to a person who is not a judicial officer, and who does
not hold his position by virtue of any authority of this State, is
within the power of the Legislature.

For the reasons thus suggested, as well as for those given by Mr. Justice INGRAHAM, I conclude that it is not.

INGRAHAM and McLAUGHLIN, JJ., concurred.

BARRETT, J. (dissenting):

The sole question here is whether section 920 of the Code of Civil Procedure is or is not unconstitutional. If it is, then there is no constitutional provision of law to compel a witness to testify in this State under a foreign commission. For it was held in the *Matter of Searls* (155 N. Y. 333) that a justice of the Supreme Court was without power to hear or determine an application to punish such a witness for refusing to answer questions put to him before a commissioner. The power to so punish, said the court in that case, rested exclusively with the commissioner under this section. The point now raised is a narrow one. It is said that the witness is deprived of due process of law, *first*, because the pertinency and propriety of the questions which he refused to answer were determined by the commissioner, and, *second*, because the commitment which followed his refusal was granted and signed by that officer. The claim is, that the commissioner is not a judicial officer, and that the witness could be constitutionally deprived of his liberty only by the act of some member of the judiciary of the State. While agreeing with the general view of this subject expressed by Brother INGRAHAM, I am unable to concur in his application of certain well-settled principles to the precise case under consideration. The point of divergence between us is where the application of these principles begins. The provision of the Constitution was, in my judgment, primarily aimed at a direct attack upon the individual; that is, at any act or proceeding the immediate purpose of which is to deprive him of life, liberty or property.

The cases of *Langenberg* v. *Decker* (131 Ind. 471); *Whitcomb's Case* (120 Mass. 118) and *In re Huron* (58 Kans. 152) are examples of this view, although in one of them (the Indiana case) the court rested its judgment upon a special provision of the Constitution of the State in terms excluding one department of the government from exercising any of the functions of another. Here, however, there is no proceeding against the individual; nothing whatever aiming at a deprivation of his life, liberty or property. The law of our State requires him to give certain information, to testify to facts

within his knowledge.   The direct object of the proceeding bears solely upon the rights of others, namely, the plaintiff and the defendant in the action.   The witness' testimony may affect the property of these others ; it cannot seemingly affect his.   He has apparently no interest whatever either in the litigation or in the deposition. The proceeding here does not directly touch his life, liberty or property   Even as a mere witness, however, he is doubtless entitled to " due process of law," for the proceeding may possibly affect him indirectly.   But what is due process of law *as to him?*   Plainly, the service of a subpœna issued by competent authority, requiring his attendance before a particular person authorized by the law of this State to take his deposition, at a particular place, on a particular day and hour.   That he had in the present case.   The law gave it to him.   The law also provides that he shall attend before the particular person so authorized by it to take his deposition at the time and place named in the subpœna, and then and there testify to facts within his knowledge.   The same law provides, in substance and effect, that, in case of his refusal to so attend, or upon attendance to so testify, he shall be deprived of his liberty until he complies. Where is the violation of his constitutional rights in this legislation ? The object of the proceeding was not to restrain him of his liberty, but to secure his testimony.   The restraint is but in aid of the real purpose.   And, further, he was not punished in the ordinary sense of punishment.   No fine was imposed upon him ; no specified term of imprisonment awarded.   The law simply enforced its mandate. Under the law commitment directly follows non-compliance as effect follows cause.   No further exercise of judgment intervenes between the refusal and the commitment.   The moment the witness complies he is free.   Until then, as between confinement and obedience, he chooses the former.   The Code, it is true, provides for a formal commitment to be signed by the commissioner.   That, however, was unnecessary.   The law would have been constitutional, and equally effective, had it simply provided that the sheriff should take the witness into custody and confine him upon the commissioner's certificate or record of non-compliance.

It is, however, contended that the law must limit its authorization to act as commissioner to one who is a member of the judiciary of the State.   It will not suffice, in this view, should the commissioner

named in the *dedimus potestatem* be in fact a member of that judiciary. The reasoning is that such an appointment would be but an act of courtesy on the part of the foreign court. In that case, too, the judge named in the *dedimus* would act here, not as a judge, but as commissioner. The law, then, so the argument runs, is unconstitutional, because it does not, in terms, confine the foreign court's area of selection to the members of our own judiciary. Upon that postulate the fact that the commissioner in the present case is a notary public, appointed under our own law and intrusted thereby with important functions, is treated as beside the question. He may be a judicial officer of the State, and our highest court may even have held that his duties are of a judicial character. (*People* v. *Rathbone*, 145 N. Y. 434; *Matter of Searls, supra*.) But that does not help the law. As commissioner he is acting, not as a notary public, not as a public or judicial officer, but simply as the agent of the foreign court. That court might have appointed some one who was not a public or judicial officer of this State. Consequently the law is unconstitutional. It is thus unconstitutional because it does not set its face against this — because, in fact, it does not affirmatively require the appointment as commissioner of one of our own classified judicial officers; and it cannot be validated by the accident of the appointment as commissioner of one who happens to be such an officer. This reasoning seems — with respect, be it said — like a travesty upon due process of law as applicable to a witness. Its fundamental fallacy is in failing to distinguish between powers which, under the Constitution, can only be exercised by the judiciary, and powers of a quasi-judicial character, which the Legislature is constitutionally authorized to confer upon whom it pleases. The power to determine the. pertinency and propriety, *quoad* a witness, of a question propounded under a foreign commission, is clearly within the latter category. It is intrusted to the commissioner because it is but a subsidiary function in the preparatory phase of the litigation. It is based upon the sensible theory that the substantial rights of the witness do not demand that the judiciary should be burdened with such trivialities. There is nothing in the Constitution which requires the personal intervention of the judges in all subsidiary matters, even though such matters call for the exercise of a certain amount of judgment; and a law impos-

ing a duty upon others with regard to such subsidiary matters will not be declared invalid if it can fairly be upheld. It is for the Legislature, within reasonable limitations, to say what are strictly judicial functions, which can be exercised only by judges of the court, and what are minor, formal or subsidiary functions, which may be intrusted to clerks, assistants or other persons. In the latter category, by almost universal comity, have been embraced commissioners appointed to take depositions outside of their respective States. The courts making such appointments invariably reserve to themselves their appropriate judicial functions, leaving it to the commissioner to pass only upon the general pertinency of the testimony. The just distinction between judicial and subsidiary functions is thus made. The pertinency and propriety of questions, *quoad* a witness, have no necessary relation to their competency or ultimate admissibility upon the trial. A decision upon the latter head is strictly judicial to be made only by the judges of the court in which the action is pending. The decision as to the pertinency of the evidential material to be subsequently subjected to judicial scrutiny is a subordinate function, which may be properly delegated to others. So far as the witness is concerned, a question is pertinent if within the general scope of the inquiry; and it is proper if it invades no right of his as such witness. It is said, however, that even within this limited power the commissioner may possibly wrong or oppress the witness. Any one upon whom power is conferred may, of course, abuse his power. Should the commissioner do so, should he direct the witness to answer questions which are wholly impertinent or personally indecent — seemingly a rather far-fetched idea — the remedy by certiorari, with a stay of the commissioner's determination pending review, is open to him (Code Civ. Proc. § 2131), and it seems to be reasonably adequate to protect him against mere insult or oppression. If, then, this minor function, namely, that of determining what is generally pertinent to the inquiry, be constitutionally conferred upon the commissioner, the witness surely has due process of law; and it only confuses the real question on that head to dwell in the same connection upon the formal means adopted by the Legislature to compel submission to the exercise of the power. If the primary power exists, the secondary follows as a sequential mandate, legislatively directed.

The commissioner exercises no further judgment, much less discretion, on the subject of the commitment. Having lawfully decided that the questions are pertinent and proper, his *quasi* judicial power of determination is exhausted, and upon non-compliance the commitment follows, in effect ministerially. His signature thereto is simply the sheriff's authority to hold the witness until he answers. It cannot be withheld. Having once passed judgment upon the pertinency and propriety of the question, he *must* compel an answer by exercising the powers of a justice of the peace upon a trial.

In the precise case presented by this record it might be said that these considerations are in a measure academic, for it will be observed that there is here absolutely no question with regard to the witness' rights as such. He did not decline to speak upon the ground that his answers would tend to criminate or degrade him. He simply refused — without any assigned reason — to speak at all. He raised no question whatever as to the propriety of the questions propounded, or as to their relevancy or competency. He had, indeed, nothing to do with their relevancy or competency. Nor, as we have seen, had the commissioner. That officer's judgment was limited to the pertinency and propriety of the questions; that is, to determining whether they were entirely foreign to the litigation, or were within its general area. All else was left to the court from which the commission issued. In all else, too, the parties to the litigation were alone interested. Thus the commissioner here made no adjudication upon the witness' rights. He simply decided that the questions propounded were within the general scope of the litigation between the parties. That was not an adjudication for or against the witness. It was simply a prerequisite to commitment for refusal to answer a question which, as to him, was pertinent and proper. But even if the commissioner had adjudicated upon the witness' rights, the conclusion would be the same. The only right which the witness has is his privilege with regard to answers tending to criminate or degrade him. If any question had arisen here on that head, and the commissioner had passed upon it adversely to the witness, his action, as already indicated, could have been reviewed by certiorari, and the execution of his determination in the meantime stayed. Such action on the commissioner's part would have been, as to the witness, in its nature judicial, just as is the action of legis-

lative committees, and of certain boards and commissioners exercising judgment in matters within their jurisdiction. The commissioner's action here would be thus reviewable (and due process of law thereby further extended to the witness), because he would to that extent exercise judgment upon a subject-matter over which the Legislature had (constitutionally) given him qualified and limited jurisdiction. In the concrete issue now presented, however, the latter question does not arise. As there was no adjudication against the witness his attitude was this : — being required by law to speak, and giving no reason whatever why he should not speak, he capriciously remained mute. It seems to me an extraordinary proposition that at this stage the statute in question deprived the witness of due process of law merely because the mittimus was not required to be signed by some member of the judiciary of the State. It might as well be said that the Code provision which permits an execution against the person to be signed by an attorney is unconstitutional. In the latter case the statute gives the defendant due process of law when it requires a preliminary verdict in tort to be rendered against him. In the case at bar, it gives the defendant due process of law when it requires him, upon being duly subpœnaed, to appear and answer a question which the commissioner lawfully determines to be pertinent and proper. It is that lawful determination and that alone which authorizes and compels the commitment.

By an act passed in 1887 (Chap. 213) the Governor is empowered to issue subpœnas in any matter pertaining to an application for clemency, and to compel witnesses to appear before him and answer. Section 5 of the act provides that the Governor shall possess all the powers in relation to such provisions which are possessed by any court or judge. Is this section, too, unconstitutional, because the Governor is not called upon to go to the judiciary for the enforcement of his mandate? He has, it is said, jurisdiction over the subject-matter of pardons, but still the question remains, could the Legislature constitutionally confer upon the executive the power to commit a witness? The answer, it seems to me, must clearly be in the affirmative. The Governor could exercise no such power under the general provision of the Constitution with respect to pardons. The Legislature alone could confer it. It is the statute law of the land which there requires the witness to attend and answer, and the

requirement is constitutional. It is the statute law, too, which provides for the recalcitrant witness' restraint until he answers, and that is equally constitutional. Under the act of 1887 the Governor is authorized to appoint a person to conduct the hearing. It would, in my judgment, be entirely constitutional had the act provided for the restraint of the recalcitrant witness upon the proper certificate of such person showing the recalcitrancy.

Acts like that under consideration are to be found in many of our sister States. They proceed upon principles of comity. Sister States, quite as much as the courts of different countries, are mutually bound to lend each other aid to promote the ends of justice. Efforts have frequently been made in the courts of other States, under circumstances like the present, to secure the discharge of recalcitrant witnesses on habeas corpus. These efforts have invariably failed. In none of the cases, however, relating to commitments by notaries public has this constitutional question been discussed. (*Ex parte McKee*, 18 Mo. 599; *Ex parte Priest*, 76 id. 229; *In re Abeles*, 12 Kans. 451.) Until now no one, it seems, has ventured to present it. In *Ex parte McKee* it is said that "A notary public being authorized to take depositions, and having the same powers for that purpose as are conferred on justices of the peace, may summon a witness before him, and may enforce his attendance if he fails to attend, and if he attends, and refuses to give evidence which may lawfully be required to be given, the notary may commit him to prison *until he gives the evidence.*"

To sum the matter up, in the case at bar the commissioner was empowered, by the law of this State, to take the deposition. So far that law was surely constitutional. It gave the commissioner jurisdiction over the subject-matter, namely, the deposition, a jurisdiction which he thus exercised under the direct confirmatory authority of this State. Possessing that jurisdiction thus directly conferred upon him by our law, the commitment was but ancillary thereto, an incident to its effective exercise. As in the Governor's case, the provision but gave effect to the constitutionally granted jurisdiction. Neither in the conferring of such jurisdiction, nor in the requirement to answer pertinent and proper questions, nor in the power given to the commissioners to determine what are pertinent and proper questions, nor yet in the method provided for compel-

ling answers to such questions, is the witness deprived of due process of law within the meaning and intent of the Constitution. The law itself points out the " process " throughout; and it is " due process," in that the witness is to be properly subpœnaed, is to be brought face to face with the commissioner, is to be there commanded to answer as required by an officer duly authorized by the law, and upon his refusal is to be restrained of his liberty only until he so answers. The substance of the commitment is the recital by the commissioner of the jurisdictional facts. The rest is mere matter of form.

The logical result of the opinion of the majority of the court is that no law for the taking of depositions in this State to be used in a sister State is constitutional which permits the due execution of the commission by one who is not a member of the judiciary of the State as defined in the Constitution. The practical effect of such a decision is to put an end to commissions and to relegate our State to letters rogatory. If, however, a law which authorizes the commissioner appointed by the courts of a sister State to execute such commission here, and as a part of his duty to pass upon the pertinency and propriety of the questions propounded to a witness thereunder, be constitutional (and I venture to suggest that its constitutionality has never before been questioned), then surely it is constitutional to provide for its enforcement in the manner here indicated. When the witness has been duly subpœnaed, has appeared before the commissioner and been sworn, and has refused without reason to answer, the mittimus at once runs against him, not, as we have seen, as an independent exercise of judicial power, but, in substance and effect, as the absolute mandate of the law. It follows immediately and directly upon his refusal to answer. Upon the statutory pre-requisites being complied with the commissioner has no discretion to grant or withhold it. He *must* thereupon exercise that particular power of a justice of the peace upon a trial. Nor would even a judge — had the act required the mittimus to be signed by such an officer — have any such discretion. In either case, compliance with the plain statutory duty could be compelled by mandamus.

I am, therefore, of the opinion that the section of the Code in question is constitutional, and that the order appealed from should be reversed and the prisoner remanded.

Order affirmed, with ten dollars costs and disbursements.